**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **TERRELLE PRYOR, on behalf of himself and all others similarly situated,** | **Case No. 2:24-cv-04019** |
| ***Plaintiff,*** | Judge Sarah D. Morrison |
| **v.** | Magistrate Judge Elizabeth Preston Deavers |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION aka NCAA; LEARFIELD COMMUNICATIONS, LLC fka IMG COLLEGE; THE OHIO STATE UNIVERSITY; and THE BIG 10 CONFERENCE, INC.,** | **ORAL ARGUMENT REQUESTED** |
| ***Defendants.*** | |

---

**DEFENDANTS NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S AND THE
BIG TEN CONFERENCE, INC.'S MOTION TO DISMISS THE COMPLAINT**

---

Defendants National Collegiate Athletic Association and The Big Ten Conference, Inc. (hereinafter, the Defendants), by and through their respective undersigned counsel, hereby move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for entry of an Order dismissing with prejudice this action in its entirety for failure to state a claim upon which relief can be granted.

The Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's action with prejudice. A Memorandum in Support of the Defendants' Motion to Dismiss is attached pursuant to the Court's standing order.

Dated:  January 3, 2025

By: */s/ Michael Ferrara*
Michael Ferrara (0097584), Trial Attorney
**DINSMORE & SHOHL, LLP**
191 W. Nationwide Blvd. Ste 200
Columbus, OH 43215
Telephone: 614-628-6975
Facsimile: 614-628-6890
michael.ferrara@dinsmore.com

Britt M. Miller (*pro hac vice*)
Daniel T. Fenske (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for The Big Ten Conference, Inc.*

Respectfully submitted,

By: */s/ Rakesh Kilaru*
Rakesh Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Calanthe Arat (*pro hac vice*)
Matthew Skanchy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

By: */s/ Keith Shumate*
Keith Shumate (0056190), Trial Attorney
Erin K. Hassett (0099970)
**SQUIRE PATTON BOGGS**
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Telephone: (614) 365-2834
Facsimile: (614) 365-2499
keith.shumate@squirepb.com
erin.hassett@squirepb.com

*Counsel for National Collegiate Athletic Association*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **TERRELLE PRYOR, on behalf of himself and all others similarly situated,** | **Case No. 2:24-cv-04019** |
| *Plaintiff,* | Judge Sarah D. Morrison |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION aka NCAA; LEARFIELD COMMUNICATIONS, LLC fka IMG COLLEGE; THE OHIO STATE UNIVERSITY; and THE BIG 10 CONFERENCE, INC.,** | **ORAL ARGUMENT REQUESTED** |
| *Defendants.* | |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S AND THE BIG TEN CONFERENCE, INC.'S MOTION TO DISMISS

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

SUMMARY OF ARGUMENT ............................................................................................ 1

INTRODUCTION ............................................................................................................... 6

BACKGROUND ................................................................................................................. 8

      A.     Prior Suits ............................................................................................... 9

            1.     *O'Bannon & Keller* ................................................................... 9

            2.     *Alston* .......................................................................................... 12

      B.     Other Related Litigation ........................................................................ 14

      C.     This Case ................................................................................................. 15

ARGUMENT ...................................................................................................................... 16

I.     Plaintiff's Claims Are Time-Barred Because He Challenges Conduct that Occurred at Least Fourteen Years Ago. ............................................................................................ 16

II.     Plaintiff's Claims Are Barred by the *Alston* and *Keller* Settlement Releases and *O'Bannon* Judgment. ......................................................................................................... 21

      A.     *Alston* Forecloses Plaintiff's Claims for Damages. ............................... 21

      B.     *Keller* Forecloses Plaintiff's Claims Related to Use of NIL in Videogames ................................................................................................ 23

      C.     *O'Bannon* Forecloses Plaintiff's Claims for Injunctive Relief. ............. 24

III.     Plaintiff Has Not Plausibly Pleaded Injury. .................................................................. 27

      A.     Plaintiff Cannot Satisfy His Burden to Plead Plausible Injury in Fact and Antitrust Injury by Alleging the Deprivation of Nonexistent Rights. .................. 27

      B.     Plaintiff Has No Copyright Interests in Games in Which He Played. ................... 29

      C.     Plaintiff Has No Cognizable Right of Publicity in Rebroadcasts of NCAA Game Footage. ........................................................................................ 30

            1.     *Players do not have rights of publicity in the broadcasts of sports events.* ................................................................................ 30

   2.   *Ohio law specifically disclaims a right of publicity for participants
        in sports broadcasts.* ..................................................................32

   3.   *Any right-of-publicity-based claim premised on later use of
        copyrighted footage would be preempted by the Copyright Act.*...............34

IV.   Plaintiff's Unjust Enrichment Claim Must Be Dismissed. .................................36

CONCLUSION.......................................................................................................37

CERTIFICATE OF SERVICE .................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                           **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 16

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ........................................................................................................ 27

*ATC Distribution Group v. Whatever It Takes Transmissions & Parts, Inc.*,
   402 F.3d 700 (6th Cir. 2005) .......................................................................................... 37

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
   805 F.2d 663 (7th Cir. 1986) .......................................................................................... 34

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 16, 18

*Best v. AT&T Mobility, LLC*,
   No. 1:12-CV-564, 2015 WL 1125539 (S.D. Ohio Mar. 12, 2015) .................................. 37

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ............................................................................................. 4, 27, 28

*Buck v. Thomas M. Cooley L. Sch.*,
   597 F.3d 812 (6th Cir. 2010) ............................................................................................ 9

*CBC Cos., Inc., v. Equifax, Inc.*,
   561 F.3d 569 (6th Cir. 2009) .......................................................................................... 28

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
   56 F.3d 359 (2d Cir. 1995) ............................................................................................. 26

*Chappel v. Hunter*,
   No. 1:23-cv-728, 2024 WL 1307221 (S.D. Ohio Mar. 27, 2024) ..................................... 9

*Choh v. Brown Univ.*,
   No. 3:23-cv-00305, 2024 WL 4465476 (D. Conn. Oct. 10, 2024) .............................. 1, 20

*Clark v. Littler Mendelson PC*,
   No. 2:23-CV-4205, 2024 WL 278164 (S.D. Ohio Jan. 25, 2024) ..................................... 8

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ................................................................................................... 4, 30

*Cooper v. Fed. Reserve Bank of Richmond*,
   467 U.S. 867 (1984) ............................................................................................ 3, 24, 25

*Cummings v. Soul Train Holdings LLC*,
   67 F. Supp. 3d 599 (S.D.N.Y. 2014)..........................................................35

*Daniels v. FanDuel, Inc.*,
   No. 116CV01230TWPDKL, 2017 WL 4340329 (S.D. Ind. Sept. 29, 2017)..................32

*Danziger & De Llano, LLP v. Morgan Verkamp, LLC*,
   No. C-220478, 2023 WL 3606699 (Ohio Ct. App. 2023) ..................1, 5, 17, 36

*Does 1-2 v. Déjà Vu Servs., Inc.*,
   925 F.3d 886 (6th Cir. 2019) ................................................................22

*Donaway v. Rohm & Haas Co.*,
   No. 3:06-CV-575-H, 2009 WL 1917083 (W.D. Ky. July 1, 2009)..................23

*Dora v. Frontline Video, Inc.*,
   15 Cal. App. 4th 536 (Cal. Ct. App. 1993) ....................................30

*Dryer v. NFL*,
   55 F. Supp. 3d 1181 (D. Minn. 2014)........................................5, 31, 36

*Dryer v. NFL*,
   814 F.3d 938 (8th Cir. 2016) ....................................5, 31, 34, 35

*Evans v. Pearson Enters., Inc.*,
   434 F.3d 839 (6th Cir. 2006) ................................................................17

*Expert Elec., Inc. v. Levine*,
   554 F.2d 1227 (2d Cir. 1977)................................................................26

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981)........................................................24, 25, 26

*Fuentes v. Mega Media Holdings, Inc.*,
   721 F. Supp. 2d 1255 (S.D. Fla. 2010) ......................................35

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990)........................................................................28

*Gautier v. Pro-Football, Inc.*,
   304 N.Y. 354 (N.Y. 1952) ................................................................35

*Gionfriddo v. MLB*,
   94 Cal. App. 4th 400 (Cal. Ct. App. 2001) ..................................31

*Grand Rapids Plastics, Inc. v. Lakian*,
   188 F.3d 401 (6th Cir. 1999) ................................................................20

*Guy v. Lexington-Fayette Ur. Cnty. Gov't*,
    488 F. App'x 9 (6th Cir. 2012) ......................................................................... 18, 19

*Hamilton Cnty. Bd. of Cnty. Comm'rs v. NFL*,
    445 F. Supp. 2d 835 (S.D. Ohio 2006) .......................................................... 16

*Hamilton Cnty. Bd. Of Comm'rs v. NFL*,
    491 F.3d 310 (6th Cir. 2007) ........................................................ 1, 16, 18, 19

*Hobart Corp. v. Dayton Power & Light Co.*,
    997 F. Supp. 2d 835 (S.D. Ohio 2014) .......................................................... 26

*House v. NCAA*,
    545 F. Supp. 3d 804 (N.D. Cal. 2021) ........................................................... 31

*Hudson v. Datanyze, LLC*,
    702 F. Supp. 3d 628 (N.D. Ohio 2023) ....................................................... 5, 33

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020) ................................................................. 34, 35, 36

*In re Literary Works in Electronic Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) .................................................................. 2, 22, 23

*In re NCAA Litig. Grant-In-Aid Cap Antitrust Litig.*,
    375 F. Supp. 3d 1058 (N.D. Cal. 2019) ................................................. 2, 14, 21

*In re NCAA Litig. Grant-In-Aid Cap Antitrust Litig.*,
    958 F.3d 1239 (9th Cir. 2020) ....................................................... 2, 7, 12, 14

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    990 F. Supp. 2d (N.D. Cal. 2013) ................................................................. 31

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    No. 09-1967, 2014 WL 1410451 (N.D. Cal. 2014) ........................................ 31

*In re NFL's Sunday Ticket Litig.*,
    933 F.3d 1136 (9th Cir. 2019) ....................................................................... 30

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ....................................................................... 19

*Kiser v. Reitz*,
    765 F.3d 601 (6th Cir. 2014) ...................................................................... 4, 27

*Kramer v. Pollock-Krasner Found.*,
    890 F. Supp. 250 (S.D.N.Y. 1995) .............................................................. 5, 36

*Lacy v. Principi*,
    317 F. Supp. 2d 444 (S.D.N.Y. 2004) ................................................................. 25, 26

*Laumann v. NHL*,
    907 F. Supp. 2d 465 (S.D.N.Y. 2012) ........................................................................ 30

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*,
    589 F.3d 835 (6th Cir. 2009) ............................................................................ 2, 3, 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 4, 27

*Lunsford v. Sterilite of Ohio, L.L.C.*,
    165 N.E.3d 245 (Ohio 2020) ..................................................................................... 33

*Madison Square Garden, L.P. v. National Hockey League*,
    No. 07 CV 8455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) .................................... 20

*Maloney v. T3 Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ................................................................................... 34

*Man v. Warner Bros. Inc.*,
    317 F. Supp. 50 (S.D.N.Y. 1970) .............................................................................. 32

*Marshall v. ESPN, Inc.*,
    111 F. Supp. 3d 815 (M.D. Tenn. 2015) ........................................................... *passim*

*Marshall v. ESPN*,
    668 F. App'x 155 (6th Cir. 2016) ..................................................................... *passim*

*Martinez v. W. Ohio Health Care Corp.*,
    872 F. Supp. 469 (S.D. Ohio 1994) .......................................................................... 19

*Melendez v. Sirius XM Radio, Inc.*,
    50 F. 4th 294 (2d Cir. 2022) ........................................................................ 5, 34, 35, 36

*Mettke v. Hewlett Packard Co.*,
    No. 2:11-CV-00410, 2012 WL 1158629 (S.D. Ohio Apr. 6, 2012) ................................. 8

*NBA v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997) ........................................................................ 4, 29, 30, 34

*NFL v. Alley*,
    624 F. Supp. 6 (S.D. Fla. 1983) ............................................................................ 5, 31

*O'Bannon v. NCAA*,
    7 F. Supp. 3d 955 (N.D. Cal. 2014) .................................................................. *passim*

*O'Bannon v. NCAA*,
    580 U.S. 815 (2016)................................................................................ 12

*O'Bannon v. NCAA*,
    802 F.3d 1049 (9th Cir. 2015) .................................................... *passim*

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) ..................................................... 22

*Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*,
    701 F.3d 1093 (6th Cir. 2012) .......................................................... 26

*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir.1987) ............................................................. 19

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)........................................................................... 26

*Parks v. LaFace Records*,
    329 F.3d 437 (6th Cir. 2003) ....................................................... 5, 31

*Peck v. Gen. Motors Corp.*,
    894 F.2d 844 (6th Cir. 1990) ...................................................... *passim*

*Pittsburgh Athletic Co. v. KQV Broad. Co.*,
    24 F. Supp. 490 (W.D. Pa. 1938)..................................................... 30

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117 (2d Cir. 2007)............................................................. 28

*Rawe v. Liberty Mut. Fire Ins. Co.*,
    462 F.3d 521 (6th Cir. 2006) ..................................................... 25, 26

*Ray v. ESPN, Inc.*,
    783 F.3d 1140 (8th Cir. 2015) ......................................................... 34

*Ritchie v. Williams*,
    395 F.3d 283 (6th Cir. 2005) ........................................................... 37

*Robertson v. NBA*,
    622 F.2d 34 (2d Cir. 1980)............................................................... 22

*Roe v. Amazon.com*,
    714 F. App'x 565 (6th Cir. 2017) .................................................... 33

*Rooney v. Columbia Pictures Indus., Inc.*,
    538 F. Supp. 211 (S.D.N.Y. 1982)................................................... 28

*Ruffin-Steinback v. dePasse,*
    267 F.3d 457 (6th Cir. 2001) ................................................................. 36, 37

*S.W. Broad. Co. v. Oil Center Broad. Co.,*
    210 S.W.2d 230 (Tex. Civ. App. 1947) ....................................................... 30

*Scherer v. JP Morgan Chase & Co.,*
    508 F. App'x 429 (6th Cir. 2012) ............................................................ 3, 26

*Smith v. Bayer Corp.,*
    564 U.S. 299 (2011) ................................................................................ 3, 25

*Sports Props., Inc. v. Indep. Sch. Dist. No. 11,*
    957 P.2d 137 (Okla. Civ. App. 1998) .......................................................... 30

*Stinnett v. United States,*
    891 F. Supp. 2d 858 (M.D. Tenn. 2012) ..................................................... 17

*Twentieth Century Sporting Club v. Transradio Press Serv., Inc.,*
    165 Misc. 71 (N.Y. Sup. Ct. 1937) ............................................................. 30

*United States v. Mont,*
    723 F. App'x 325 (6th Cir. 2018) ................................................................. 8

*Vinci v. American Can Co.,*
    591 N.E.2d 793 (Ohio App. 1990) ..................................................... 5, 32, 33

*Vulcan, Inc. v. Fordees Corp.,*
    658 F.2d 1106 (6th Cir. 1981) .................................................................... 26

*W.H. Midwest, LLC v. A.D. Baker Homes, Inc.,*
    No. 2:18-CV-1387, 2019 WL 4645497 (S.D. Ohio Sept. 24, 2019) ......................... 36, 37

*Washington v. NFL,*
    880 F. Supp. 2d 1004 (D. Minn. 2012) ...................................................... 4, 30

*Wis. Interscholastic Athletic Ass'n v. Gannett Co.,*
    658 F.3d 614 (7th Cir. 2011) .................................................................. 5, 30

*Yong Ki Hong v. KBS Am., Inc.,*
    951 F. Supp. 2d 402 (E.D.N.Y. 2013) ...................................................... 5, 36

**Statutes**

15 U.S.C. § 15b .......................................................................................... 1, 6, 16

17 U.S.C. § 106 ................................................................................................ 34

17 U.S.C. § 201(a) ......................................................................................... 4, 29

17 U.S.C. § 301(a) ......................................................................................................... 34

765 Ill. Comp. Stat. 1075/35(b)(2) ................................................................................. 32

Cal. Civ. Code § 3344(d) ............................................................................................... 32

Ohio Rev. Code § 2305.07............................................................................... 1, 5, 17, 36

Ohio Rev. Code § 2741.02(A) ......................................................................................... 8

Ohio Rev. Code § 2741.02(B) ....................................................................................... 33

Ohio Rev. Code § 2741.02(D)(1) ...................................................................... 5, 8, 28, 32

Ohio Rev. Code § 2741.09(A) .......................................................................................... 5

Ohio Rev. Code § 2741.09(A)(1)(a) ............................................................................... 32

Ohio Rev. Code § 2741.09(A)(1)(b) ................................................................................. 8

Ohio Rev. Code § 2741.09(A)(3) ............................................................................... 8, 32

Ohio Rev. Code § 2741.09(A)(5) ............................................................................... 8, 33

Tenn. Code. § 47-25-1107(a)(1) ............................................................................... 28, 29

**Rules**

Federal Rule of Civil Procedure 9(b) ............................................................................. 17

Federal Rule of Civil Procedure 23(b)(2) ...................................................................... 12

Federal Rules of Civil Procedure 12(b)(6)............................................................. 8, 16, 27

**Other Authorities**

Order & Final J., *In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
    No. 14-md-2541-CW, ECF No. 746 (N.D. Cal. Dec. 6, 2017) .................................. *passim*

Final J. & Order of Dismissal with Prejudice, *Keller v. NCAA*,
    No. 4:09-cv-1967-CW, ECF No. 1244 (N.D. Cal. August 19, 2015).................... 2, 10, 23

Am. Class Action Settlement Agreement & Release, *Keller v. NCAA*,
    4:09-cv-1967-CW, ECF No. 1158-2 (N.D. Cal. July 23, 2014)............................ 7, 11, 23

## SUMMARY OF ARGUMENT

Pursuant to Rule 7.2(a)(3) of the Local Rules for the United States District Court for the Southern District of Ohio, the National Collegiate Athletic Association and The Big Ten Conference, Inc. (hereinafter, the Defendants) submit this summary of the principal arguments included in the memorandum in support of their motion to dismiss and identify the primary legal authority cited in support of those arguments. A list of all legal authority cited in the memorandum is contained in the Table of Authorities above.

**Argument § I:**   **Plaintiff's Claims Are Time-Barred Because He Challenges Conduct That Occurred at Least Fourteen Years Ago.**

**Memorandum Pages 16 to 21.**

The Clayton Act establishes a four-year statute of limitations for federal antitrust claims. Plaintiff's unjust enrichment claim is likely subject to a four, and at most six, year limitations period under Ohio law. The limitations period commences when a defendant commits an act that injures the plaintiff. According to his own allegations, Plaintiff was allegedly injured at least fourteen years ago when, pursuant to then-existing NCAA rules, he allegedly gave up purported name, image, and likeness (NIL) and publicity rights to be able to participate in college athletics. Plaintiff's claims are thus more than a decade too late and should be dismissed.

**Primary Legal Authority:**

15 U.S.C. § 15b

Ohio Rev. Code § 2305.07

*Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, No. C-220478, 2023 WL 3606699 (Ohio Ct. App. 2023)

*Peck v. Gen. Motors Corp.*, 894 F.2d 844 (6th Cir. 1990)

*Hamilton Cnty. Bd. Of Comm'rs v. NFL*, 491 F.3d 310 (6th Cir. 2007)

*Choh v. Brown Univ.*, No. 3:23-cv-00305, 2024 WL 4465476 (D. Conn. Oct. 10, 2024)

**Argument § II.A:**          *Alston* **Forecloses Plaintiff's Claims for Damages.**

**Memorandum Pages 21 to 23.**

Plaintiff was a member of a damages settlement class in *In re NCAA Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-02541-CW (N.D. Cal.) [hereinafter *Alston*], that fully released the claims he now seeks to litigate. The settlement release applies to all past, present and future claims for monetary damages arising out of or relating in any way to any of the legal, factual, or other allegations made in *Alston*. Plaintiff's demand for compensation for the alleged use of his purported NIL and publicity rights falls within the legal and factual allegations raised in *Alston*. The *Alston* release thus bars him from again raising those claims here.

**Primary Legal Authority:**

Order & Final J., *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541-CW, ECF No. 746 (N.D. Cal. Dec. 6, 2017) [hereinafter *Alston* Final Approval Order]

*In re NCAA Litig. Grant-In-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019) [hereinafter *Alston I*]

*In re NCAA Litig. Grant-In-Aid Cap Antitrust Litig.*, 958 F.3d 1239 (9th Cir. 2020) [hereinafter *Alston II*]

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835 (6th Cir. 2009)

*In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011)

**Argument § II.B:**          *Keller* **Forecloses Plaintiff's Claims Related to Use of NIL in Videogames.**

**Memorandum Page 23.**

Plaintiff was a member a damages settlement class in *Keller v. NCAA*, 4:09-cv-1967 (N.D. Cal) that released any claims related to use of alleged NIL in NCAA-branded videogames. To the extent Plaintiff seeks compensation for use of his alleged NIL and publicity rights in connection with such games, the *Keller* settlement release precludes him from litigating those claims here.

**Primary Legal Authority:**

Final J. & Order of Dismissal with Prejudice, *Keller v. NCAA*, No. 4:09-cv-1967-CW, ECF No. 1244 (N.D. Cal Aug. 19, 2015) [hereinafter *Keller* Final Approval Order]

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835 (6th Cir. 2009)

**Argument § II.C:** **_O'Bannon_ Forecloses Plaintiff's Claims for Injunctive Relief.**

**Memorandum Pages 24 to 26.**

Plaintiff was a member of a certified injunctive class in *O'Bannon v. NCAA*, No. 4:09-cv-3329 (N.D. Cal). The *O'Bannon* injunctive class litigated to final judgment a challenge to NCAA rules on compensation for the use of student-athletes' purported NIL in, among other materials, game footage licensed or sold by Defendants, both during and after class members' eligibility to play college sports. Plaintiff is bound by the judgment in *O'Bannon* and res judicata precludes him from bringing the same injunctive claim here.

**Primary Legal Authority:**

*O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014) [hereinafter *O'Bannon I*]

*O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015) [hereinafter *O'Bannon II*]

*Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984)

*Smith v. Bayer Corp.*, 564 U.S. 299 (2011)

*Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429 (6th Cir. 2012)

**Argument § III.A:** **Plaintiff Cannot Satisfy His Burden to Plead Plausible Injury in Fact and Antitrust Injury by Alleging the Deprivation of Nonexistent Rights.**

**Memorandum Pages 27 to 29.**

Plaintiff cannot satisfy his burden of pleading constitutional standing (injury in fact) and antitrust injury. The Sixth Circuit affirmed the dismissal of similar antitrust claims to those brought here because participants in sports broadcasts do not have cognizable legal rights to the broadcasts or rebroadcasts of events in which they participated. *See Marshall v. ESPN*, 668 F. App'x 155, 157 (6th Cir. 2016). Plaintiff's sole alleged injury is the deprivation of purported publicity rights to NCAA game footage, but Plaintiff has no legal right to that footage and thus cannot have been injured by purported rules or conduct that denied him compensation for rights he does not have.

**Primary Legal Authority:**

*Marshall v. ESPN*, 668 F. App'x 155 (6th Cir. 2016)

*Marshall v. ESPN, Inc.*, 111 F. Supp. 3d 815 (M.D. Tenn. 2015)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477 (1977)

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014)

**Argument § III.B:**   **Plaintiff Has No Copyright Interest in Games in Which He Played.**

**Memorandum Pages 29 to 30.**

Plaintiff has not alleged any plausible basis for claiming co-ownership of copyrights in any broadcast footage of the NCAA games in which he played. Instead, the copyright to such footage rests with the broadcasters, promoters, and/or producers—not Plaintiff. As a result, claims premised on later uses of copyrighted footage (such as Plaintiff's here) are not viable antitrust claims, as a copyright holder's exercise of rights granted by the Copyright Act is not anticompetitive conduct as a matter of law.

**Primary Legal Authority:**

17 U.S.C. § 201(a)

*NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997)

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)

*Washington v. NFL*, 880 F. Supp. 2d 1004 (D. Minn. 2012)

**Argument § III.C:**   **Plaintiff Has No Cognizable Right of Publicity in Rebroadcasts of NCAA Game Footage.**

**Memorandum Pages 30 to 36.**

State statutes and judicial decisions uniformly recognize that the rights to license a sporting event lie exclusively with the event's promoter or producer. Consequently, *participants*, including Plaintiff, have no right of publicity in a broadcast or rebroadcast of a sporting event. That is also true under Ohio law, where state law explicitly disclaims a right of publicity or related consent

requirements for participants in sports broadcasts. Even if Plaintiff could identify some state-law publicity right, his claims would still fail as a matter of law because they would be preempted by the federal Copyright Act.

**Primary Legal Authority:**

Ohio Rev. Code § 2741.02(D)(1)

Ohio Rev. Code § 2741.09(A)

*Marshall v. ESPN*, 668 F. App'x 155 (6th Cir. 2016)

*Marshall v. ESPN, Inc.*, 111 F. Supp. 3d 815 (M.D. Tenn. 2015)

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003)

*Wis. Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614 (7th Cir. 2011)

*Dryer v. NFL*, 55 F. Supp. 3d 1181 (D. Minn. 2014), *aff'd*, 814 F.3d 938 (8th Cir. 2016)

*NFL v. Alley*, 624 F. Supp. 6, 10 (S.D. Fla. 1983)

*Hudson v. Datanyze, LLC*, 702 F. Supp. 3d 628 (N.D. Ohio 2023)

*Vinci v. American Can Co.*, 591 N.E.2d 793 (Ohio App. 1990)

*Melendez v. Sirius XM Radio, Inc.*, 50 F. 4th 294 (2d Cir. 2022)

**Argument § IV:** **Plaintiff's Unjust Enrichment Claim Must Be Dismissed.**

**Memorandum Pages 36 to 37.**

Plaintiff cannot salvage his failed antitrust claims by recharacterizing them as an unjust enrichment claim. As with his antitrust claims, Plaintiff's unjust enrichment claim is untimely, barred by the *Alston* settlement agreement, and is premised on the alleged deprivation of a nonexistent right of publicity.

**Primary Legal Authority:**

Ohio Rev. Code § 2305.07

*Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, No. C-220478, 2023 WL 3606699 (Ohio Ct. App. May 24, 2023)

*Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402 (E.D.N.Y. 2013)

*Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250 (S.D.N.Y. 1995)

## INTRODUCTION

The issue of whether student-athletes should be compensated for their names, images, and likenesses (NIL) has generated widespread public commentary and significant litigation. In the last fifteen years alone, over ten lawsuits have been filed demanding increased student-athlete compensation, two of which were litigated to final judgment and all the way to the Supreme Court. Few legal issues have been better ventilated and more exhaustively litigated.

Against that backdrop, Plaintiff Terrelle Pryor, a former student-athlete who competed in college football at least fourteen years ago, has now filed this lawsuit on behalf of a sweeping proposed class going back decades, seeking to relitigate the NCAA's rules around NIL compensation as if it is a novel and groundbreaking issue. But his claims fail as a matter of law for several independent reasons.

*First*, Plaintiff's claims are all time-barred. The Clayton Act establishes a four-year statute of limitations for antitrust claims. 15 U.S.C. § 15b. The face of the Complaint makes clear that Plaintiff waited too long to bring this action: Plaintiff stopped participating in college athletics at least fourteen years ago, *see id.* at PageID 6, ¶ 29, and his claims all arise from the conclusory and unsupported allegation that when he was a student-athlete, the Defendants required him to relinquish control over his alleged NIL and publicity rights in perpetuity in exchange for the ability to participate in college athletics, *see* Compl., ECF No. 1 at PageID 4, ¶ 19; PageID 14, ¶ 83. Recognizing the untimeliness of his claims, Plaintiff gestures at exceptions to the statute of limitations but offers nothing more than conclusory and barebones allegations that are legally insufficient to invoke such exceptions.

*Second*, Plaintiff's claims are barred by res judicata and/or prior releases of the very claims he now seeks to relitigate. Plaintiff was part of a class damages settlement under which he released

"any and all past, present and future claims"[1] related to "the NCAA's entire compensation framework." *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, 958 F.3d 1239, 1247 (9th Cir. 2020) [hereinafter, *Alston II*]. That broad release precludes him from again raising those damages claims here. Plaintiff was also a member of the certified settlement class in *Keller v. NCAA. See* Am. Class Action Settlement Agreement & Release, *Keller v. NCAA*, 4:09-cv-1967-CW, ECF No. 1158-2 (N.D. Cal. July 23, 2014) [hereinafter *Keller* Settlement]. As part of that settlement agreement, the class released any claims related to compensation for the use of their NIL in NCAA-branded video games. To the extent his broad and conclusory allegations implicate such a claim, that release prevents Plaintiff from relitigating that claim here. Finally, Plaintiff is a member of the certified injunctive relief class in *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014) [hereinafter *O'Bannon I*]. The *O'Bannon* class litigated to final judgment a challenge to NCAA rules on compensation for the use of student-athletes' purported NIL "in *game footage* or in videogames licensed or sold by Defendants," both during *and after* their eligibility to play college sports. *Id.* at 965 (emphasis added). Res judicata precludes Plaintiff from relitigating the same injunctive relief claim a decade later. More broadly, Plaintiff's participation in multiple decades-old lawsuits involving NIL compensation underscores why this latest lawsuit is incurably untimely.

*Third*, Plaintiff fails to plausibly plead injury. It is well-settled that participants in live sporting events have no cognizable right of publicity in broadcasts (or redistributions of them), as has been recognized by the Sixth Circuit in a directly-on-point case drawing on decades of precedent. *See Marshall v. ESPN*, 668 F. App'x 155, 157 (6th Cir. 2016) [hereinafter *Marshall II*].

---

[1] Order & Final J., *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541-CW, ECF No. 746 at 11–12 (N.D. Cal. Dec. 6, 2017) [hereinafter *Alston* Final Approval Order].

And claims based on any such hypothetical rights would be preempted by the Copyright Act. Moreover, Plaintiff fails to specify any source of law providing a basis for claiming a right of publicity to game footage. But if, for example, Plaintiff claims such a right under the laws of Ohio, those laws only confirm that any of Plaintiff's alleged publicity rights do not extend to the footage or broadcasts (and rebroadcasts) of his participation in live college sporting events. *See, e.g.*, Ohio Rev. Code § 2741.02(D)(1) (exception for "sports broadcast[s]"); Ohio Rev. Code § 2741.09(A)(3) (exception for "the broadcast or reporting of an event or topic of general public interest"); Ohio Rev. Code § 2741.09(A)(1)(b) (exception for material that has "newsworthy value"); Ohio Rev. Code § 2741.09(A)(5) (exception for use of an individual's persona by an institution of higher learning). That is particularly true where, as here, the broadcasts and rebroadcasts are not used for commercial purposes or to advertise a particular product. *See* Ohio Rev. Code § 2741.02(A) (prohibiting use of an individual's persona "for a commercial purpose").

*Finally*, Plaintiff's unjust enrichment claim must be dismissed. Although Plaintiff does not specify any source of law providing a basis for that claim, he cannot resuscitate his failed antitrust claims by recharacterizing them as an equitable claim.

The Complaint should accordingly be dismissed in its entirety with prejudice.

## BACKGROUND

Plaintiff's claims in this case do not arrive on a blank slate. Below, we summarize the most relevant details of the long history of litigation over NCAA rules and NIL.[2]

---

[2] When considering a Rule 12(b)(6) motion to dismiss, a court may consider "the complaint" and "public documents of which it would be proper to take judicial notice." *Mettke v. Hewlett Packard Co.*, No. 2:11-CV-00410, 2012 WL 1158629, at *1 (S.D. Ohio Apr. 6, 2012) (collecting cases). It is "well-settled that federal courts may take judicial notice of proceedings in other courts of record," *United States v. Mont*, 723 F. App'x 325, 327 n.3 (6th Cir. 2018), including settlement agreements that have a direct relation to the matters at issue, *see, e.g.*, *Clark v. Littler Mendelson PC*, No. 2:23-CV-4205, 2024 WL 278164, at *3 (S.D. Ohio Jan. 25, 2024); *see also*

A.     Prior Suits

1.     *O'Bannon & Keller*

On May 5, 2009, Sam Keller, a former college football player, filed suit in the Northern District of California against the NCAA, Electronic Arts, Inc. (EA), and the Collegiate Licensing Company (CLC). He claimed that the defendants had violated his alleged state-law NIL rights by using his NIL in a college football video game. Shortly thereafter, on July 21, 2009, Ed O'Bannon, a former college basketball player, sued the NCAA and CLC in the same court. "The gravamen of O'Bannon's complaint was that the NCAA's amateurism rules, insofar as they prevented student-athletes from being compensated for the use of their NILs, were an illegal restraint of trade under Section 1 of the Sherman Act." *O'Bannon v. NCAA*, 802 F.3d 1049, 1055 (9th Cir. 2015) [hereinafter *O'Bannon II*]. O'Bannon also specifically challenged NCAA rules allegedly requiring student-athletes to sign forms "relinquish[ing] all rights in perpetuity for use of their images, likenesses and/or names." 3d Consolidated Am. Class Action Compl., *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 4:09-cv-1967-CW (N.D. Cal. July 19, 2013), ECF No. 832 ¶ 610; *see also id.* ¶¶ 373, 599, 613. The *O'Bannon* plaintiffs' sweeping claims addressed the use of student-athlete NIL not only in live game broadcasts, but also archival footage used for promotional purposes. *See, e.g., id.* ¶¶ 444–76 (DVDs, on-demand video rentals, a "vault" of archival video, "video-clip sales to corporate advertisers and others," "premium content on websites," and photos). The district court consolidated the cases, which proceeded before the Honorable Claudia Wilken.

---

*Chappel v. Hunter*, No. 1:23-cv-728, 2024 WL 1307221, at *1 n.1 (S.D. Ohio Mar. 27, 2024). A "court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

On November 8, 2013, Judge Wilken denied certification of a damages relief class but certified an injunctive relief class in *O'Bannon* defined as:

> All current ***and former*** student-athletes residing in the United States who compete on, or competed on, an NCAA Division I (formerly known as 'University Division' before 1973) college or university men's basketball team or on an NCAA Football Bowl Subdivision (formerly known as Division I-A until 2006) men's football team and whose images, likenesses and/or names may be, or have been, included or could have been included (by virtue of their appearance in a team roster) in ***game footage*** or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees.

*O'Bannon*, 7 F. Supp. 3d at 965 (emphasis added). As noted above, the reference to "game footage" covered both live and archival footage—as confirmed by the inclusion of *former* student-athletes in the *injunctive* class definition. The *O'Bannon* and *Keller* plaintiffs, and plaintiffs asserting similar claims in other related cases, settled their claims against EA and CLC. After the class certification decision, the *O'Bannon* plaintiffs voluntarily dismissed their damages claims against the NCAA with prejudice. *O'Bannon* was subsequently deconsolidated from *Keller*.

The *Keller* plaintiffs then settled their claims with the NCAA on behalf of a certified settlement class that included:

> All NCAA football and basketball players (1) listed on a roster published or issued by a school whose team was included in an NCAA-Branded Videogame published or distributed from May 4, 2003 through September 3, 2014, and (2) whose assigned jersey number appears on a virtual player in the software, or whose photograph was otherwise included in the software.

Final J. & Order of Dismissal with Prejudice, *Keller v. NCAA*, 4:09-cv-1967-CW, ECF No. 1244 at 2 (N.D. Cal. Aug. 19, 2015) [hereinafter *Keller* Final Approval Order]. Plaintiff was a member of The Ohio State University (OSU) football team for the 2008, 2009, and 2010 seasons, Compl., ECF No. 1 at PageID 6, ¶ 29, a team featured in NCAA-branded videogames, which means

Plaintiff was thus a member of the *Keller* settlement class.[3] As relevant here, on behalf of the settlement class the *Keller* plaintiffs agreed to release:

> [A]ny and all past, present, and future claims . . . rising out of, involving, or relating to the alleged use of any name, image, photograph, or likeness in EA's production, manufacture, sale, distribution, or publication of NCAA-Branded Videogames, or the alleged use of or failure to compensate for the alleged use of any NCAA student-athlete's name, image, photograph, or likeness in connection with EA'S NCAA-Branded Videogames by the NCAA, EA, CLC, or any Person, that have been, could have been, or should have been asserted in the Lawsuits, including but not limited to any claims based in any way on alleged rights of publicity or name, image, and likeness rights under the law of any state or the United States, whether recognized now or hereafter, including any rights recognized in court decisions or statutes.

*Keller* Settlement ¶ 33.

The remaining injunctive claims against the NCAA in *O'Bannon* proceeded to a bench trial. The court found that the challenged NIL compensation rules violated Section 1 of the Sherman Act in a narrow way. Judge Wilken thus prohibited the NCAA from capping scholarships to student-athletes below the federal "cost of attendance." *O'Bannon I*, 7 F. Supp. 3d at 1007–08. She also "prohibit[ed] the NCAA from enforcing any rules to prevent its member schools and conferences from offering to deposit a limited share of licensing revenue in trust for their FBS football and Division I basketball recruits, payable when they leave school or their eligibility expires." *Id.* at 1008.

The Ninth Circuit affirmed in part and reversed in part. It affirmed the injunction prohibiting the NCAA from capping scholarships below the cost of attendance. *O'Bannon II*, 802 F.3d at 1075. But it concluded that the district court clearly erred by enjoining the NCAA to permit

---

[3] *See, e.g.*, 3d Consolidated Am. Class Action Compl., *Keller v. NCAA*, 4:09-cv-1967-CW, ECF No. 832 ¶¶ 279–81 (describing OSU football team and player depicted in 2009 NCAA Football game).

students "to receive NIL cash payments untethered to their education expenses." *Id.* at 1076. The

Supreme Court denied certiorari. *O'Bannon v. NCAA*, 580 U.S. 815 (2016) (Mem.).

        2.    *Alston*

     In March of 2014, while *O'Bannon* proceeded, a number of other student-athletes filed

several different antitrust actions against the NCAA and many of the Division I (DI) conferences.

On June 13, 2014, the Judicial Panel on Multidistrict Litigation consolidated those actions into an

MDL under the caption *NCAA Grant-In-Aid Cap Antitrust Litigation* (*Alston*).

     "Rather than confining their challenge to rules prohibiting NIL compensation," the *Alston*

plaintiffs "sought to dismantle the NCAA's entire compensation framework." *Alston II*, 958 F.3d

at 1247. That is, they challenged all NCAA limits on compensation and benefits in excess of the

cost of attendance, not just those related to NIL. The district court certified three different

injunctive relief classes under Federal Rule of Civil Procedure 23(b)(2). *See* Order, *Alston*, No.

4:14-md-02541-CW, ECF No. 305 (N.D. Cal. Dec. 4, 2015).

     On February 3, 2017, the parties submitted a proposed settlement agreement resolving only

the damages claims on behalf of three settlement classes. The district court approved that

agreement on December 6, 2017. As relevant here, one of those classes was the DI FBS Football

Class:

> All current and former NCAA Division I Football Bowl Subdivision ("FBS")
> football student-athletes who, at any time from March 5, 2010 through the date of
> Preliminary Approval of this Settlement, received from an NCAA member
> institution for at least one academic term (such as a semester or quarter) a Full
> Athletics Grant-In-Aid (defined herein).

*Alston* Final Approval Order at 2. Plaintiff was encompassed in this class. *See* Compl., ECF No.

1 at PageID 6, ¶ 29.

     The defendants agreed to pay roughly $208 million, with each class member receiving a

payment based on the number of years played (approximately $6,000 for four years). *Alston* Final

Approval Order at 1. While the *Alston* plaintiffs' claims were not specifically limited to NIL, the measure of relief the class received—the difference between the grant-in-aid scholarships they received and full cost-of-attendance scholarships—was exactly what was required to be permitted as NIL-related compensation pursuant to the injunctive relief judgment in *O'Bannon* (which challenged only NIL restrictions). *See id.*; *O'Bannon I*, 802 F.3d at 1075.

> In exchange, the plaintiffs agreed, on behalf of the classes, to a broad release of claims:
>
> As of the Settlement Agreement's Effective Date, the Releasors will release the Releasees from *any and all past, present and future claims, demands, rights, actions, suits, or causes of action, for monetary damages of any kind* (including but not limited to actual damages, statutory damages, and exemplary or punitive damages), whether class, individual or otherwise in nature, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall or may have, *arising out of or relating in any way to any of the legal, factual, or other allegations made in Plaintiffs' Actions, or any legal theories that could have been raised on the allegations in Plaintiffs' Actions*.

*Alston* Final Approval Order at 11–12 (emphasis added; footnotes omitted).

The "Releasees" entitled to the benefit of the settlement included "the NCAA, each of the Conference Defendants, and each of their respective member institutions (past and present), subsidiary, parent, related, and affiliated Persons," and other related parties. *Id.* at 11 n.49. The Releasees were "discharged and released from all Released Claims" and the class members of the settlement were "permanently barred and enjoined from instituting or prosecuting any of the Released Claims." *Id.* at 12. The settlement agreement and judgment were "binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the [settlement classes]." *Id.*

The released claims in the *Alston* damages settlement did not include "claims solely for prospective injunctive relief." *Id.* After a ten-day bench trial on those claims, Judge Wilken found

that "preventing unlimited cash payments" was a permissible procompetitive effect of the challenged rules but concluded that goal could be achieved through less restrictive means, specifically "an alternative compensation scheme that would allow limits on the grant-in-aid scholarships at not less than the cost of attendance and limits on compensation and benefits unrelated to education, but that would generally prohibit the NCAA from limiting education-related benefits." *In re NCAA Litig. Grant-In-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1062 (N.D. Cal. 2019) [hereinafter *Alston I*]. The Ninth Circuit affirmed. *Alston II*, 958 F.3d at 1244. The Supreme Court, in turn, affirmed the Ninth Circuit. *NCAA v. Alston*, 594 U.S. 69, 106–07 (2021).

B.    <u>Other Related Litigation</u>

Several other antitrust suits against the NCAA and other defendants named in this case have been pending for quite some time. Most notably, in 2020, the attorneys from *Alston* filed a highly publicized lawsuit seeking to eliminate *all* NCAA rules limiting NIL compensation. *See In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal.). Since then, many other cases have been filed addressing student-athlete compensation more generally. *See Hubbard v. NCAA*, No. 4:23-cv-01593 (N.D. Cal.); *Fontenot v. NCAA*, No. 1:23-cv-03076-CNS-STV (D. Colo.); *Carter v. NCAA*, No. 3:23-cv-06325-RS (N.D. Cal.). In May 2024, the parties announced a settlement in three of these four ongoing cases.[4] Other suits similar to this one have been filed in

---

[4] The settlement did not directly resolve *Fontenot* but would resolve the class claims in that case. The court preliminarily approved the settlement in October 2024. Order Granting Mot. for Preliminary Settlement Approval, *In re College Athlete NIL Litig.* (*House*), No. 4:20-cv-03919-CW (N.D. Cal.), ECF No. 544 (*House* Preliminary Approval Order). The settlement agreement includes a football settlement class of "[a]ll student-athletes who have received or will receive full GIA scholarships and compete on, competed on, or will compete on . . . an FBS football team, at a college or university that is a member of one of the Power Five Conferences . . . at any time from June 15, 2016 through September 15, 2024." *Id.* ¶ 5.

the Southern District of New York, the Eastern District of Michigan, the North Carolina Superior Court, and the Los Angeles Superior Court.

      C.    <u>This Case</u>

      Plaintiff Terrelle Pryor was a successful DI football player at OSU. Compl., ECF No. 1 at PageID 6, ¶ 29. His college football career began more than sixteen years ago, and he played as starting quarterback for OSU's football team in the 2008, 2009, and 2010 football seasons. *Id*. After the completion of the 2010 football season, fourteen years ago, and after learning that he would receive a five game suspension for the then-upcoming 2011 college football season for selling memorabilia, Plaintiff chose to forego his final year at OSU to pursue a professional football career in the National Football League. *Id.*

      Plaintiff has sued the NCAA, the Big Ten Conference, Inc., OSU, and Learfield Communications, LLC. *Id*. at PageID 1. He alleges violations of the Sherman Act and asserts a claim for unjust enrichment (without specifying a legal basis for that claim). *Id.* at PageID 13–15. The underpinning of Plaintiff's Complaint is the allegation that then-existing NCAA rules required him and the class he hopes to represent to give up their alleged NIL and publicity rights in perpetuity in exchange for competing in college athletics, and that, as a result, he and other student-athletes have not been compensated for use of their NIL or alleged publicity rights. *Id*. at PageID 4, ¶¶ 18–23. As in *O'Bannon*, Plaintiff challenges the defendants' alleged use of "archival footage" and images of games in which he was a participant, as well as "offering footage and images for sale or license." *Id.* at PageID 8, ¶ 44. He also asserts that he and other students were prohibited from promoting commercial products while they were student-athletes. *Id.* at PageID 4, ¶ 18.

      Plaintiff seeks to represent a proposed class, and two sub-classes (the Group Licensing Damages sub-class and the Social Media Damages sub-class), defined as:

> All former student-athletes who competed on an Ohio State athletic team at any time prior to the changes to the name, image, and likeness rules of the NCAA.

*Id.* at PageID 9–10. Plaintiff seeks declaratory and injunctive relief and compensation for the alleged use of his NIL and publicity rights by Defendants, including a share of game telecast group licensing revenue, missed social media earning opportunities, and disgorgement of profits. *Id.* at PageID 9–15.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For several reasons, Plaintiff cannot clear that bar.

## I. PLAINTIFF'S CLAIMS ARE TIME-BARRED BECAUSE HE CHALLENGES CONDUCT THAT OCCURRED AT LEAST FOURTEEN YEARS AGO.

Plaintiff's antitrust claims are based on alleged conduct that occurred at least fourteen years ago (longer for some proposed class members)[5] and thus are barred by the applicable four-year statute of limitations. *See* 15 U.S.C. § 15b; *Hamilton Cnty. Bd. of Cnty. Comm'rs v. NFL*, 445 F. Supp. 2d 835, 841 (S.D. Ohio 2006), *aff'd*, 491 F.3d 310 (6th Cir. 2007).

An antitrust claim "accrues and the limitations period commences each time a defendant commits an act which injures the plaintiff[]." *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 848 (6th

---

[5] Plaintiff seeks to represent a purported class that spans an undefined period of time, but at a minimum reaching back decades. To the extent Plaintiff seeks to represent a class including former student-athletes that competed at OSU between June 2016 through when the NCAA announced a change in its rules regarding NIL on June 30, 2021, *see* Compl., ECF No. 1 at PageID 9–10, in addition to many of those claims being time-barred, the purported class members from that period would be members of the *House* settlement and could not pursue their claims here absent opting out of the *House* settlement, *see House* Preliminary Approval Order at 4.

Cir. 1990). The act alleged here is the unsupported assertion that Defendants required Plaintiff "to cede control" of his publicity rights "in perpetuity" or else forfeit his right to compete in college athletics. Compl., ECF No. 1 at PageID 4, ¶ 19. Plaintiff participated in college athletics at least fourteen years ago, *see id.* at PageID 6, ¶ 29, and any alleged requirement to give up control of his purported NIL or publicity rights would have occurred while Plaintiff was still a student-athlete— well outside the four-year limitations period.

Similarly, while the source of law for Plaintiff's unjust enrichment claim is unclear, there is no apparent basis for believing it is timely. If, for example, Plaintiff's claim is brought under Ohio law, the statute of limitations would likely be four years (and, at most, six years), and in either case untimely. *See* Ohio Rev. Code § 2305.07; *see also Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, No. C-220478, 2023 WL 3606699 (Ohio Ct. App. May 24, 2023)

Plaintiff makes only a feeble effort to explain his decision to wait fourteen years to file this lawsuit—even though many other student-athletes filed NIL-related lawsuits earlier and he was a class member in at least three of those lawsuits. Plaintiff's Complaint contains a single cursory and conclusory allegation that the Defendants purportedly "engaged in fraudulent concealment of their misuse of the publicity rights of the Plaintiffs," Compl., ECF No. 1 at PageID 4, ¶ 16, and also vaguely suggests a potential reference to the "continuing violations" doctrine, *id.* at PageID 6, ¶ 31. Neither allegation is availing here.

First, Plaintiff's unsupported and barebones allegations are insufficient to properly plead fraudulent concealment with particularity, as required by Federal Rule of Civil Procedure 9(b). *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 850–51 (6th Cir. 2006). Plaintiff fails to allege *any* supporting factual details, which are essential to properly plead fraudulent concealment, *see Stinnett v. United States*, 891 F. Supp. 2d 858, 869 (M.D. Tenn. 2012), and instead relies on a

single conclusory invocation of fraud that is legally insufficient, *see Twombly*, 550 U.S. at 545 (requiring courts to disregard "labels and conclusions").

Moreover, Plaintiff does not—and cannot—make any factual allegations that the Defendants took any action to conceal their alleged misconduct, a fundamental element of any fraudulent concealment claim. *See* Compl., ECF No. 1 at PageID 4, ¶ 16. Instead, Plaintiff appears to claim that the alleged misconduct was accomplished through the NCAA's rules, which are widely disseminated and publicly available. *See id.* These rules only applied to Plaintiff when he was a student-athlete at least fourteen years ago, and Plaintiff points to no conduct, rule, or policy currently in effect (or in effect within the limitations period) that prevented him from receiving compensation for his NIL. That is because there is none. *See O'Bannon I*, 7 F. Supp. 3d at 983–84 (finding that "former student-athletes are already permitted to receive compensation for the use of their names, images, and likenesses in game re-broadcasts and other archival footage of their college performances as long as they enter into such agreements after they leave school").

Similarly, Plaintiff cannot plausibly claim that he acted diligently in seeking to uncover the facts that supposedly give rise to the causes of action he now brings. *See Guy v. Lexington-Fayette Ur. Cnty. Gov't*, 488 F. App'x 9, 19 (6th Cir. 2012). *cert. denied*, 568 U.S. 980 (2012); *Hamilton Cnty. Bd. of Comm'rs v. NFL*, 491 F.3d 310, 315 (6th Cir. 2007). Those underlying facts have been known to Plaintiff throughout his time as a student-athlete and for more than a decade thereafter, as he and other student-athletes were class members of multiple highly publicized litigation matters alleging similar claims centered on similar factual allegations of unauthorized use of NIL. *See supra* at 9–16, *infra* at 21–26. Under these circumstances, Plaintiff cannot claim he acted diligently when he failed to bring this case until now. *See Guy*, 488 F. App'x at 19–20 (6th Cir. 2012) (media articles put plaintiff on constructive notice, thus precluding fraudulent

concealment claim); *Hamilton Cnty. Bd.*, 491 F.3d at 315–16 (highly publicized prior litigation, among other things, precluded fraudulent concealment claim).

Second, Plaintiff vaguely alludes to what might very generously be described as a "continuing violation" argument, alleging that the Defendants continue to use his purported NIL rights without compensation. *See, e.g.*, Compl., ECF No. 1 at PageID 6, ¶ 31. But the continuing violation exception requires a plaintiff to identify an "overt act" by the defendant *within the limitations period*. *Peck*, 894 F.2d at 849. That overt act must constitute a "separate antitrust violation[ ]," and must inflict "a continuing injury to competition, not merely a continuing pecuniary injury to a plaintiff." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1055–56 (5th Cir. 1982) (citation and internal quotation marks omitted). "[T]he focus is on the timing of the causes of injury, i.e., the defendant's overt acts," not "the effects of the overt acts." *Peck*, 894 F.2d at 849.

Plaintiff cannot satisfy those requirements here. Under Plaintiff's theory, his claimed injury occurred the moment he purportedly transferred his alleged NIL rights in perpetuity to the Defendants in exchange for participating in college athletics. Compl., ECF No. 1 at PageID 4, ¶ 19. And even if the continued use of game footage involving Plaintiff raised legal concerns, such use flows from and "is . . . merely a reaffirmation of a previous act," that is, Plaintiff's transfer of his alleged NIL rights, pursuant to a purported then-existing NCAA policy, long before the limitations period. *Martinez v. W. Ohio Health Care Corp.*, 872 F. Supp. 469, 472 (S.D. Ohio 1994) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir.1987)). That alleged conduct was a discrete occurrence at the time Plaintiff was a student-athlete, and not an

ongoing or repetitive set of independent acts that continue to this day.[6] Furthermore, as noted above, the rules identified by Plaintiff only applied to him when he was a student-athlete, and he points to no rule or policy that has applied to him within the limitations period that caused any alleged injury.

Courts have rejected the continuing violations argument in factually analogous circumstances. Nearly three months ago, the District of Connecticut did so in dismissing a challenge to an agreement among Ivy League schools not to award athletic scholarships. *See Choh v. Brown Univ.*, No, 3:23-cv-00305-AWT, 2024 WL 4465476, at *12–13 (D. Conn. Oct. 10, 2024). The court there concluded that the plaintiff's "claim accrued . . . and the statute of limitations began running" when "he enrolled at Brown University," and that the decision not "to award him an athletic scholarship or compensation for athletic services during the remainder of his time at Brown was simply a manifestation of . . . Brown's decision to enter into the most recent version of the Ivy League Agreement." *Id.* at *12. Similarly, in *Madison Square Garden, L.P. v. National Hockey League*, No. 07 CV 8455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008), the court rejected an antitrust challenge to NHL rules requiring clubs to grant exclusive rights to the NHL, finding that the renewal of the licenses did not constitute "overt acts" restarting the limitations period. *Id.* at *10. Here, Plaintiff similarly challenges the continuing effects of an alleged requirement or agreement completed well outside the limitations period. Indeed, this action presents an even clearer case for dismissal than *Madison Square Garden* because plaintiffs there (unlike Plaintiff

---

[6] Defendants dispute the allegations that they required Plaintiff to give up purported NIL or publicity rights in exchange for deeming him eligible to participate in college sports. *See* Compl., ECF No. 1 at PageID 4, ¶ 19; Page ID 14, ¶ 83. But those assertions amount to an (unsupported) allegation that an agreement or contract existed between Plaintiff and the Defendants, and performance of a contract—even an allegedly anticompetitive contract—is not an "overt act" that restarts the limitations period. *See, e.g., Peck*, 894 F.2d at 849; *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999), *cert. denied*, 529 U.S. 1037 (2000).

here) actually renewed the challenged contract during the limitations period. *Id.* at *5, *10. Plaintiff's claims are thus time-barred and should be dismissed in their entirety.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE *ALSTON* AND *KELLER* SETTLEMENT RELEASES AND *O'BANNON* JUDGMENT.

### A. *Alston* Forecloses Plaintiff's Claims for Damages.

Plaintiff has already released the damages claims he brings here. He was a member of the *Alston* damages settlement class because he played on a DI FBS football team during the *Alston* class period, Compl., ECF No. 1 at PageID 6, ¶ 29, and he received "from an NCAA member institution for at least one academic term . . . a Full Athletics Grant-In-Aid," *Alston* Final Approval Order at 2. The Defendants are "Releasees" under the *Alston* settlement. *Id.* at 11 n.49. And Plaintiff did not opt out of the *Alston* settlement class. He has accordingly released all possible claims for money damages against the Defendants "arising out of or relating in any way to the legal, factual, or other allegations made in [*Alston*], or any legal theories that could have been raised on the allegations in [*Alston*]." *Id.* at 11–12.

Plaintiff's damages claims here are fully encompassed within that broad release, which is "binding on and ha[s] *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the Releasors." *Id.* at 12. Plaintiff demands compensation for the alleged past and current use of his purported publicity rights and NIL, as well as a share of the revenue the Defendants earned from such use. He also seeks damages for the compensation he allegedly may have obtained as a student-athlete absent rules prohibiting him from endorsing commercial products. These claims all fall within the *Alston* complaint, which challenged "the current, interconnected set of NCAA rules that limit the compensation [student-athletes] may receive in exchange for their athletic services." *Alston I*, 375 F. Supp. 3d at 1062. Plaintiff's damages claims are therefore premised on a "legal theor[y] that

could have been raised on the allegations in [*Alston*]," particularly given that *Alston* was filed while a lawsuit challenging NIL restrictions, including the alleged perpetual licensing of student-athlete NIL rights, was still pending. *Alston* Final Approval Order at 11–12.

If the *Alston* release's plain text were not enough, "[i]t is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action," even where "the precluded claim was not presented, and could not have been presented, in the class action itself" as long as "the released claims share a factual predicate with the claims pled in the complaint." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 848 (6th Cir. 2009) (citations and internal quotation marks omitted). The "factual predicate" requirement is satisfied, *see, e.g.*, *Does 1-2 v. Déjà Vu Servs., Inc*., 925 F.3d 886, 900 (6th Cir. 2019); *Olden v. Gardner*, 294 F. App'x 210, 220 (6th Cir. 2008), as both Plaintiff here and the *Alston* plaintiffs challenged NCAA rules limiting compensation generally, which necessarily includes rules limiting compensation for NIL, *see, e.g., Robertson v. NBA*, 622 F.2d 34, 35 (2d Cir. 1980) (finding that "the terms of the class action settlement are binding" in regard to "the concept of the [compensation] rule"). Res judicata thus further bars Plaintiff's damages claims.

Plaintiff cannot escape the *Alston* settlement's preclusive effect by suggesting that he challenges *ongoing* violations of his NIL rights by the Defendants' continued use of archival footage. The Second Circuit rejected that argument in *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), which concerned a class settlement of copyright infringement claims. There, the settlement objectors claimed that releasing *future* infringement claims was improper because "future infringements are distinct harms giving rise to independent claims of relief, with factual predicates that are different from authors' past

infringement claims." *Id.* at 248. The Second Circuit disagreed: "[R]egardless of whether future infringements would be considered independent injuries," they fell within the releases because the plaintiffs' complaint had sought "injunctive relief for future uses, and therefore contemplate[d] these alleged future injuries." *Id.*; *see also Donaway v. Rohm & Haas Co.*, No. 3:06-CV-575-H, 2009 WL 1917083, at *2, *6 (W.D. Ky. July 1, 2009). The same is true here.

B.     *Keller* Forecloses Plaintiff's Claims Related to Use of NIL in Videogames.

The *Keller* settlement, for the same reasons described above, similarly forecloses Plaintiff's claims to the extent they relate to or seek damages associated with use of his purported NIL or alleged publicity rights in NCAA-branded video games. In *Keller*, the court approved a settlement on behalf of a class including "[a]ll NCAA Division I football . . . players (1) listed on a roster published or issued by a school whose team was included in an NCAA-Branded Videogame originally published or distributed between May 4, 2003 through September 3, 2014 and (2) whose assigned jersey number appears on a virtual player in the software, or whose photograph was otherwise included in the software." *Keller* Final Approval Order at 2. Plaintiff was unquestionably a member of this class. The *Keller* class members agreed to release:

> [A]ny and all past, present, and future claims . . . arising out of, involving, or relating to the alleged use of any name, image, photograph, or likeness in EA's production, manufacture, sale, distribution, or publication of NCAA-Branded Videogames, or the alleged use of or failure to compensate for the alleged use of any NCAA student-athlete's name, image, photograph, or likeness in connection with EA's NCAA-Branded Videogames by the NCAA, EA, CLC, or any Person, that have been, could have been, or should have been asserted in the Lawsuits, including but not limited to any claims based in any way on alleged rights of publicity or name, image, and likeness rights under the law of any state or the United States, whether recognized now or hereafter, including any rights recognized in court decisions or statutes.

*Keller* Settlement ¶ 33.

To the extent Plaintiff's broad allegations relate to or seek damages related to his depiction in NCAA-branded videogames, they are foreclosed by the *Keller* settlement.

23

C.     *O'Bannon* Forecloses Plaintiff's Claims for Injunctive Relief.

The final judgment in *O'Bannon* resolved claims for injunctive relief on behalf of a certified class that covered, as relevant here:

> [A]ll current and former student-athletes residing in the United States who compete on, or competed on, an NCAA [DI] men's basketball team or on an NCAA [D1] men's football team  and whose images, likenesses and/or names may be, or have been, included or could have been included (by virtue of their appearance in a team roster) in **game footage** or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees.

*O'Bannon*, 7 F. Supp. 3d at 965 (emphasis added). That judgment—entered in a case challenging, among other things, the continued commercial use of game footage and photos after a student-athlete's eligibility has ended—bars relitigating the same issues here.

Plaintiff was a member of the certified injunctive class in *O'Bannon*. He competed on a DI FBS football team during the relevant period—prior to November 8, 2013, when the district court certified the class—and alleges that Defendants misappropriated his alleged NIL and publicity rights by using and continuing to use archival game footage and/or images. Plaintiff is accordingly bound by that judgment.

"[A] judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). That judgment "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The *O'Bannon* plaintiffs challenged rules and practices precluding compensation for the use of players' NIL in: "(1) live game telecasts, (2) sports video games, and (3) game rebroadcasts, advertisements, and other archival footage." *O'Bannon II*, 802 F.3d at 1057. The Ninth Circuit conclusively resolved that challenge and delineated the additional compensation the antitrust laws required the NCAA to permit. *See id.* at 1075–76.

24

That is the precise injunctive relief claim that Plaintiff seeks to relitigate here. His Complaint essentially repeats allegations from the *O'Bannon* Complaint. He complains that he has received no compensation for use of archival footage and images of football competitions from when he was a student-athlete, *see, e.g.*, Compl., ECF No. 1 at PageID 2–3, ¶¶ 7–14, and he seeks to enjoin Defendants "from further use of" his alleged "publicity rights, including [his] name[], image[], and likeness[,]" "without permission and adequate compensation," *id.* at PageID 9, ¶ 53; *see also id.* at PageID 16 (seeking a "permanent injunction preventing the Defendants from continuing in their present course of conduct in regard to the misappropriation of the names, images, and likenesses of the Plaintiff and the members of the [purported] Classes"). This is exactly the same "course of conduct" challenged in *O'Bannon*. *See* 3d Consolidated Am. Class Action Compl., *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 4:09-cv-1967-CW (N.D. Cal. July 19, 2013), ECF No. 832, ¶¶ 373, 444–76, 599, 610, 613. Plaintiff is therefore precluded from relitigating the *O'Bannon* injunction here. *See Cooper*, 467 U.S. at 874; *Moitie*, 452 U.S. at 398; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("[A] class action approved under Rule 23" binds all class members).

Although the *O'Bannon* plaintiffs did not name the Big Ten Conference, Inc. as a defendant, the *O'Bannon* judgment still bars Plaintiff's claims against both the NCAA and the Big Ten Conference, Inc. under the doctrines of res judicata and defensive nonmutual collateral estoppel. "When a party has litigated a claim to final judgment, that party cannot avoid the *res judicata* effect of that judgment by bringing suit against a new defendant that is in privity with the original defendant." *Lacy v. Principi*, 317 F. Supp. 2d 444, 447 (S.D.N.Y. 2004); *see also Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) ("'A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been*

raised in that action.'") (quoting *Moitie*, 452 U.S. at 398). Plaintiff alleges that the Big Ten Conference, Inc. is a member of the NCAA, Compl., ECF No. 1 at PageID 7, ¶ 42, and like the *O'Bannon* plaintiffs, he challenges rules that are implemented through the NCAA. The Big Ten Conference, Inc. thus has a "sufficiently close relationship" with the NCAA to justify claim preclusion. *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981) (citation and internal quotation marks omitted), *cert. denied*, 456 U.S. 906 (1982); *see also Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995); *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1223–34 (2d Cir. 1977) (concluding privity existed between a representative association and one of its members for preclusion purposes), *cert. denied*, 434 U.S. 903 (1977).

Further, "[w]here collateral estoppel is invoked defensively, only the party against whom issue preclusion is applied must have been a party to the underlying action." *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 435 (6th Cir. 2012). In addition, "[s]o long as the plaintiff had a full and fair opportunity to litigate the same issue in the prior proceeding, the doctrine of defensive, non-mutual collateral estoppel bars the plaintiff from re-litigating the issue in a subsequent suit, even against different defendants." *Hobart Corp. v. Dayton Power & Light Co.*, 997 F. Supp. 2d 835, 850 (S.D. Ohio 2014); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (concluding that the doctrine of defensive nonmutual collateral estoppel "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries'") (citation omitted); *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc*., 701 F.3d 1093, 1098 (6th Cir. 2012) ("Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory or the cast of characters-defendants.").

### III.    PLAINTIFF HAS NOT PLAUSIBLY PLEADED INJURY.

Plaintiff's antitrust claims fail for an additional, independent reason: he does not plausibly allege injury in fact and antitrust injury. Plaintiff's theory of harm rests on the idea that the Defendants engaged in an alleged conspiracy that interfered with his purported "publicity rights" in the display of copyrighted broadcast footage from the college games in which he played. *See, e.g.*, Compl., ECF No. 1 at PageID 2, 4–5, 9, 11, 13. But Plaintiff has no such rights, which dooms his claims.

      A.    <u>Plaintiff Cannot Satisfy His Burden to Plead Plausible Injury in Fact and Antitrust Injury by Alleging the Deprivation of Nonexistent Rights.</u>

An antitrust plaintiff must plead and prove both constitutional standing (injury in fact) and antitrust standing, and the Sixth Circuit has already concluded that the type of allegations pleaded by Plaintiff here fail to meet those requirements because they rest on the incorrect assumption that Plaintiff has a legal right to broadcast footage of games in which he played. *See Marshall II*, 668 F. App'x at 156–57.[7]

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized . . . ; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). "Harm to the antitrust plaintiff is sufficient to satisfy" that requirement, but the Court must then ask "whether the plaintiff is a proper party to bring a private antitrust action." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983). To prove this

---

[7] Courts addressing this issue have at times analyzed the question of injury under the pleading standards applicable to motions brought under Rule 12(b)(6), *see, e.g.*, *Marshall v. ESPN, Inc.*, 111 F. Supp. 3d 815, 824 (M.D. Tenn. 2015) [hereinafter *Marshall I*], and at other times under the pleading standards applicable to motions brought under Rule 12(b)(1), *see, e.g.*, *Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014). Plaintiff's Complaint fails to plausibly plead injury under either standard.

separate "antitrust injury" requirement, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977), a plaintiff must show "injury in fact to the plaintiff's business or property caused by the antitrust violation" that is "attributable to the anticompetitive aspect of the practice under scrutiny," *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121–22 (2d Cir. 2007). Plaintiff bears the burden of alleging facts supporting standing. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Plaintiff cannot satisfy this burden by claiming that the Defendants' alleged conspiracy deprived him of nonexistent legal rights. A federal district court granted a motion to dismiss very similar antitrust claims after concluding that participants in a broadcast "cannot have been injured by a purported conspiracy to deny them the ability to sell non-existing rights." *Marshall I*, 111 F. Supp. 3d at 835. The Sixth Circuit affirmed, concluding it had "little to add" to the district court's "notably sound and thorough opinion;" that "[t]o state the plaintiff's theory in this case is nearly to refute it," and that their antitrust claims were "meritless." *Marshall II*, 668 F. App'x at 156–57; *see also Brunswick Corp.*, 429 U.S. at 488; *CBC Cos., Inc., v. Equifax, Inc.*, 561 F.3d 569, 571– 72 (6th Cir. 2009); *Rooney v. Columbia Pictures Indus., Inc.*, 538 F. Supp. 211, 230 (S.D.N.Y. 1982) (concluding plaintiff had no "publicity rights" and therefore "cannot have suffered any antitrust injury as the result of any" alleged conspiracy concerning those purported rights), *aff'd*, 714 F.2d 117 (2d Cir. 1982). While *Marshall* based its conclusion on the language of a Tennessee, rather than an Ohio, statute, *Marshall II*, 668 F. App'x at 157, the Ohio Revised Code contains an analogous provision to the Tennessee statute discussed in *Marshall*. *Compare* Ohio Rev. Code § 2741.02(D)(1) ("A use of an aspect of an individual's persona in connection with any . . . sports broadcast . . . does not constitute a [prohibited use.]") *with* Tenn. Code. § 47-25-1107(a)(1) (providing that, "[to] the extent such use is protected by the First Amendment to the United States

Constitution," "if the use of a name, photograph, voice, or likeness [is in] connection with any . . . sports broadcast," it does not violate an individual's property right in the use of the individual's name, photograph, voice, or likeness). Thus, *Marshall*'s reasoning applies with equal weight to Plaintiff's claim.

The same logic applies here. Plaintiff complains that he has not received compensation or royalties for the rebroadcast of games in which he played, *see e.g.*, Compl., ECF No. 1 at PageID 14, ¶ 84, and that he should be entitled to a "share of game telecast" revenue received by the Defendants, *id.* at PageID 10, ¶ 55.[8] That theory rests on the faulty assumption that Plaintiff has a co-ownership of, or rights of publicity in, copyrighted broadcast footage of games in which he played. He has neither.

B.    Plaintiff Has No Copyright Interests in Games in Which He Played.

Plaintiff has not alleged—and could not allege—any plausible basis for claiming co-ownership of copyrights in any broadcast footage of the NCAA games in which he played. The copyright in a protected work "vests . . . in the author or authors of the work." 17 U.S.C. § 201(a). Live athletic events "are not 'authored' in any common sense of the word" because they are "competitive and have no underlying script." *NBA v. Motorola, Inc.*, 105 F.3d 841, 846–47 (2d Cir. 1997). Players' in-game performances thus are not "work[s] of authorship" establishing ownership rights within the meaning of the Copyright Act. *Id.*

By contrast, *broadcasts* and *recordings* of sports events are copyrightable as audiovisual

---

[8] To the extent Plaintiff claims his antitrust injury was allegedly having to relinquish his publicity rights to the Defendants in exchange for participating in college athletics, Compl., ECF No. 1 at PageID 4, ¶ 19, that claim fails for the same reasons. Plaintiff has not alleged any use of his NIL by the Defendants to advertise independent goods or services, and use of Plaintiff's NIL to advertise broadcasts themselves is not a violation of his alleged right of publicity. *See infra* Section III.C. In any event, any claim premised on that alleged injury is barred by the statute of limitations. *See supra* Section I.

works that are fixed in a tangible medium of expression. *Motorola*, 105 F.3d at 847. The author of such works is the "person who translates [the underlying game] into a fixed, tangible expression"—the broadcast footage—that is "entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Motorola*, 105 F.3d at 847; *accord In re NFL's Sunday Ticket Litig.*, 933 F.3d 1136, 1154 (9th Cir. 2019). Here, those entities are the broadcasters, promoters, and/or producers—not Plaintiff. And any claims premised on later uses of copyrighted footage are not viable antitrust claims, as a copyright holder's exercise of rights granted by the Copyright Act is not anticompetitive conduct. *See Washington v. NFL*, 880 F. Supp. 2d 1004, 1006–1008 (D. Minn. 2012).

      C.     <u>Plaintiff Has No Cognizable Right of Publicity in Rebroadcasts of NCAA Game Footage.</u>

            1.    *Players do not have rights of publicity in the broadcasts of sports events.*

State statutes and judicial decisions uniformly recognize that all rights to license a sporting event lie exclusively with the event's promoter or producer. *See, e.g.*, *Wis. Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 624–28 (7th Cir. 2011); *Laumann v. NHL*, 907 F. Supp. 2d 465, 485 (S.D.N.Y. 2012). By virtue of its physical control of the venue, the promoter may place conditions upon entry—and may grant permission to broadcast the game only to one, or to a limited number, of broadcasters. *See, e.g.*, *Pittsburgh Athletic Co. v. KQV Broad. Co.*, 24 F. Supp. 490, 492-93 (W.D. Pa. 1938); *Twentieth Century Sporting Club v. Transradio Press Serv., Inc.*, 165 Misc. 71, 73 (N.Y. Sup. Ct. 1937). An event's promoter thus exclusively owns broadcast rights for that event. *See, e.g.*, *S.W. Broad. Co. v. Oil Center Broad. Co.*, 210 S.W.2d 230, 232 (Tex. Civ. App. 1947); *Okla. Sports Props., Inc. v. Indep. Sch. Dist. No. 11*, 957 P.2d 137, 139 (Okla. Civ. App. 1998); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (Cal. Ct. App. 1993).

The necessary corollary is that *participants* have no right of publicity in a broadcast or rebroadcast of a sporting event. A right of publicity arises when a person's NIL is used to promote a product or service, not when that person simply appears in public or in a video taken in a public setting. *See Marshall I*, 111 F. Supp. 3d at 825–29; *see also Parks v. LaFace Records*, 329 F.3d 437, 459–60 (6th Cir. 2003). Thus, courts overwhelmingly agree that simply broadcasting or rebroadcasting all or portions of a sports event does not implicate players' purported publicity rights. *See, e.g.*, *Marshall II*, 668 F. App'x at 157; *Marshal I*, 111 F. Supp. 3d at 825–27; *Dryer v. NFL*, 55 F. Supp. 3d 1181, 1195–1200 (D. Minn. 2014), *aff'd*, 814 F.3d 938 (8th Cir. 2016); *NFL v. Alley*, 624 F. Supp. 6, 10 (S.D. Fla. 1983); *Gionfriddo v. MLB*, 94 Cal. App. 4th 400, 406–18 (Cal. Ct. App. 2001).

The only decision suggesting otherwise of which Defendants are aware is Judge Wilken's opinion in *O'Bannon* (to which she adhered in *House*) that there might be a right of publicity in a broadcast that could support plausible allegations of injury by current student-athletes. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-1967, 2014 WL 1410451, at *10–11 (N.D. Cal. 2014); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d at 1005–06 (N.D. Cal. 2013); and *House v. NCAA*, 545 F. Supp. 3d 804, 816–17 (N.D. Cal. 2021). The Court should follow the prevailing judicial consensus, not *O'Bannon*. *See Marshall I*, 111 F. Supp. 3d at 826–27. Doing so is correct as a matter of both law and logic. If mere presence in a sports broadcast connoted a right of publicity, every person depicted in a sporting event—not only players, but substitutes who never enter the game, coaches, cheerleaders, band members, referees, medical personnel, and even spectators—might try to assert such a right. That would make broadcasts next to impossible by giving each participant veto power over broadcasts.

2. *Ohio law specifically disclaims a right of publicity for participants in sports broadcasts.*

Plaintiff does not specify what, if any, states' laws he seeks to invoke as a basis for claiming a right of publicity in sports broadcasts and rebroadcasts. But many state statutes explicitly disclaim any right of publicity or related consent requirements for participants in sports broadcasts. *See, e.g.*, Cal. Civ. Code § 3344(d); 765 Ill. Comp. Stat. 1075/35(b)(2); *see also Man v. Warner Bros. Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) (holding that the New York NIL statute "was never intended to apply" to preclude broadcasts of events even absent an NIL release from participants). That is true in Ohio as well, and Plaintiff's claim would fail even if he had pled his claim under Ohio right of publicity statutory or common law.

The statutory right of publicity in Ohio expressly does not extend to "use of an aspect of an individual's persona in connection with any . . . sports broadcast" and such use "does not constitute a use for which consent is required," Ohio Rev. Code § 2741.02(D)(1), aligning Ohio right of publicity law with the Sixth Circuit's decision in *Marshall II*, 668 F. App'x at 156–57. More broadly, the right of publicity in Ohio "does not apply to . . . audiovisual work . . . regardless of the media in which the work appears or is transmitted, other than an advertisement or commercial announcement not exempt" under the statute. Ohio Rev. Code § 2741.09(A)(1)(a). Nor does it apply to "[m]aterial that has . . . newsworthy value," *id.* § 2741.09(A)(1)(b), or the "use of an aspect of an individual's persona in connection with the broadcast or reporting of an event or topic of general or public interest," Ohio Rev. Code § 2741.09(A)(3). And courts have recognized that college sports, including college football, are of newsworthy value and interest to the public. *See, e.g.*, *Daniels v. FanDuel, Inc*., No. 116CV01230TWPDKL, 2017 WL 4340329, at *6 (S.D. Ind. Sept. 29, 2017) (collecting cases and concluding "Plaintiffs' athletic achievements and activities are 'newsworthy' as contemplated by the [Indiana] statutory exception"). Moreover,

Plaintiff has not sufficiently alleged Defendants have used his purported NIL to advertise particular products, merchandise, or services such that the alleged use would be considered commercial as defined by Ohio's statutory right of publicity. *See, e.g.*, *Hudson. v. Datanyze, LLC*, 702 F. Supp. 3d 628, 632 (N.D. Ohio 2023) (granting motion to dismiss claim under Ohio right of publicity law because defendant's "use of plaintiffs' likenesses was clearly not an endorsement of the product"); *see also Vinci v. American Can Co.*, 591 N.E.2d 793, 793–94 (Ohio App. 1990) (concluding use of athletes' names and likenesses on a series of promotional disposable drinking cups was merely "incidental to the promotion of the Dixie cups," as "there was no implication that the athletes used, supported, or promoted the product. . . . Reference to the athletes' names, likenesses, and identities was merely incidental, historical information"). Regardless, to the extent Plaintiff alleges Defendants as "institution[s] of higher education" used his NIL while he was a student "for the promotion of the institution[s] and . . . [their] institutional objectives," such use is also expressly exempted from liability under Ohio's right of publicity law. Ohio Rev. Code § 2741.09(A)(5).

Second, Ohio's right of publicity common[9] and statutory law both concern only unauthorized use of an individual's persona, but here, Plaintiff alleges that in consideration for the benefits and opportunities provided by OSU and its DI football program, he assigned his at-issue purported NIL rights to the Defendants. Compl., ECF No. 1 at PageID 4–5, ¶¶ 19–22. *See* Ohio Rev. Code § 2741.02(B) ("A person may use an individual's persona for a commercial purpose… if the person first obtains the written consent to use the individual's persona"); *Lunsford v. Sterilite of Ohio, L.L.C.*, 165 N.E.3d 245, 254 (Ohio 2020) (granting motion to dismiss because "[c]onsent is generally an absolute defense to an invasion-of-privacy claim").

---

[9] Under Ohio common law, alleged appropriation of NIL claims are considered invasion of privacy claims. *See Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017).

3. *Any right-of-publicity-based claim premised on later use of copyrighted footage would be preempted by the Copyright Act.*

Even if Plaintiff could identify some state-law publicity right, his claims would still fail as a matter of law because they would be preempted by the Copyright Act. Plaintiff's claims largely turn on the use of copyrighted game footage. *See, e.g.*, Compl., ECF No. 1 at PageID 3, ¶ 15. But any "legal or equitable rights" in such footage that are equivalent to the exclusive rights granted to the copyright holder "are governed exclusively" by the Copyright Act, such that "no person is entitled to any such right or equivalent right in any [protected] work under the common law or statutes of any State." 17 U.S.C. § 301(a); *see Motorola*, 105 F.3d at 848 n.4. The exclusive rights protected by the Copyright Act include the right to reproduce, distribute, display, and prepare derivative works of the copyrighted work. 17 U.S.C. § 106. Thus, claims based on allegedly unauthorized use of a plaintiff's NIL are preempted absent allegations that such use was "separate from, or beyond, the rebroadcasting, in whole or in part, of the copyrightable material" featuring the plaintiff. *Melendez v. Sirius XM Radio, Inc.*, 50 F. 4th 294, 297 (2d Cir. 2022); *see also In re Jackson*, 972 F.3d 25, 40 (2d Cir. 2020); *Maloney v. T3 Media, Inc.*, 853 F.3d 1004, 1016 (9th Cir. 2017); *Dryer v. NFL*, 814 F.3d 938, 943 (8th Cir. 2016); *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 (8th Cir. 2015); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 679 (7th Cir. 1986).

To avoid preemption, Plaintiff would have to show that Defendants "manipulated or imitated" their identities or likenesses, *Melendez*, 50 F.4th at 306, or used their NIL "in a manner that implies [their] endorsement, sponsorship, or approval" of an entity, product, or opinion, *Jackson*, 972 F.3d at 48, that is "independent from the copyrighted work itself," *Melendez*, 50 F.4th at 306. *See also T3Media*, 853 F.3d at 1011; *Dryer*, 814 F.3d at 942–43; *Ray*, 783 F.3d at 1144. As to the first exception, Plaintiff only alleges that the Defendants have displayed game

footage that depicts Plaintiff's athletic performance, not that game footage has been manipulated in a way that somehow suggests Plaintiff's endorsement of a separate, independent product. *See, e.g.*, Compl., ECF No. 1 at PageID 3, ¶¶ 11–12, 15.

As to the second, copyright owners may use excerpts of copyrighted works to promote their offerings without implicating participants' publicity rights. *See Melendez*, 50 F. 4th at 305. Plaintiff alleges no facts "plausibly suggesting" that the "intended audience could reasonably construe advertisements" with game footage as Plaintiff's endorsement of Defendants' broadcasts. *Id.* (citation omitted). That "would be as implausible as an audience somehow believing that [ ] a network's advertisement for the broadcast of an upcoming National Football League game, containing video footage from a prior game, is a personal endorsement of that television network by every player featured in the game footage." *Id.* at 305; *see also Dryer*, 814 F.3d at 942–43.

Plaintiff changes nothing by alleging that, in some instances, viewers are required to watch separate advertisements before seeing game footage. Compl., ECF No. 1 at PageID 3, ¶¶ 11. Airing copyrighted materials alongside advertisements as a means of capitalizing on the copyrighted materials is not the kind of independent "commercial purpose" giving rise to a cognizable right of publicity claim. *See Marshall I*, 111 F. Supp. 3d at 837; *see also Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 358–59 (N.Y. 1952); *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 599, 603 (S.D.N.Y. 2014); *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1258–59 (S.D. Fla. 2010).

Last, Plaintiff's generic allegations that the Defendants used game footage for commercial gain fail to raise any plausible suggestion that valid rights of publicity have been misappropriated. A copyright holder is entitled to exploit the commercial value of a protected work by exercising the exclusive rights granted by the Copyright Act. Merely monetizing the reproduction and display

of copyrighted game footage does not negate preemption. *See, e.g.*, *Melendez*, 50 F. 4th at 305;

*Jackson*, 972 F.3d at 53–54; *Dryer,* 55 F. Supp. 3d at 1193; *Marshall I*, 111 F. Supp. 3d at 837.

Thus, any potential state-law right of publicity would be preempted. But in the end, the

Copyright Act analysis simply confirms the validity of the Sixth Circuit's *Marshall* ruling:

Participants in sports broadcasts have no cognizable rights giving rise to valid antitrust claims.

## IV.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.

Plaintiff provides no hint as to what source of law forms the basis of his unjust enrichment

claim. But in all events, it fails and must be dismissed for several reasons.

As an initial matter, courts have held that a plaintiff cannot salvage a failed antitrust claim

by simply recharacterizing it as an unjust enrichment claim. *See, e.g.*, *Yong Ki Hong v. KBS Am.,*

*Inc.*, 951 F. Supp. 2d 402, 424 (E.D.N.Y. 2013); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp.

250, 257 (S.D.N.Y. 1995). That principle applies with particular force here because Plaintiff's

unjust enrichment claim faces the same obstacles on the merits.

First, beyond his failure to point to any jurisdiction's law supporting such a claim, there is

no basis for believing Plaintiff's unjust enrichment claim is timely. If, for example, Plaintiff's

claim is brought under Ohio law, the statute of limitations would likely be four years (and, at most,

six years), and in either case is untimely. *See* Ohio Rev. Code § 2305.07; *Danziger & De Llano,*

*LLP*, 2023 WL 3606699, at *8.

Second, Plaintiff's unjust enrichment claim would be barred by the *Alston* settlement,

which released Plaintiff's right to bring all claims "for monetary damages of *any kind* . . . under

the laws of *any jurisdiction*." *Alston* Final Approval Order at 11 (emphasis added). The *Alston*

release unequivocally encompasses Plaintiff's unjust enrichment claim.

Finally, any unjust enrichment claim fails for the same reasons the antitrust claims fail. It

too is premised on failed theories regarding nonexistent rights of publicity, *see*, *e.g.*, *Ruffin-*

*Steinback v. dePasse*, 267 F.3d 457, 462–63 (6th Cir. 2001); *Marshall I*, 111 F. Supp. 3d at 837, and is also preempted by the Copyright Act, which preempts claims that a defendant was unjustly enriched by use of a protected work of authorship. *See, e.g.*, *Ritchie v. Williams*, 395 F.3d 283, 289 (6th Cir. 2005); *ATC Distribution Group v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 713–14 (6th Cir. 2005); *W.H. Midwest, LLC v. A.D. Baker Homes, Inc.*, No. 2:18-CV-1387, 2019 WL 4645497 (S.D. Ohio Sept. 24, 2019); *Best v. AT&T Mobility, LLC*, No. 1:12-CV-564, 2015 WL 1125539, at *10–11 (S.D. Ohio Mar. 12, 2015).

## CONCLUSION

The Complaint should be dismissed in its entirety.

Dated: January 3, 2025

Respectfully submitted,

By: */s/ Michael Ferrara*
Michael Ferrara (0097584), Trial Attorney
**DINSMORE & SHOHL, LLP**
191 W. Nationwide Blvd. Ste 200
Columbus, OH 43215
Telephone: 614-628-6975
Facsimile: 614-628-6890
michael.ferrara@dinsmore.com

Britt M. Miller (*pro hac vice*)
Daniel T. Fenske (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for The Big Ten Conference, Inc.*

By: */s/ Rakesh Kilaru*
Rakesh Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Calanthe Arat (*pro hac vice*)
Matthew Skanchy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

By: */s/ Keith Shumate*
Keith Shumate (0056190), Trial Attorney
Erin K. Hassett (0099970)
**SQUIRE PATTON BOGGS**
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Telephone: (614) 365-2834
Facsimile: (614) 365-2499
keith.shumate@squirepb.com
erin.hassett@squirepb.com

*Counsel for National Collegiate Athletic Association*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2025, I electronically filed the foregoing Defendants' Motion To Dismiss The Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties and counsel of record. Parties may access this filing through the Court's system.

Dated:  January 3, 2025

By: */s/ Rakesh Kilaru*
Rakesh Kilaru (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com

By: */s/ Keith Shumate*
Keith Shumate (0056190), Trial Attorney
**SQUIRE PATTON BOGGS**
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Telephone: (614) 365-2834
Facsimile: (614) 365-2499
keith.shumate@squirepb.com

*Counsel for National Collegiate Athletic Association*