UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TERRELLE PRYOR,**

   **Plaintiff,**  :

 v.          **Case No. 2:24-cv-4019**
            **Chief Judge Sarah D. Morrison**
            **Magistrate Judge Elizabeth A.**
**NATIONAL COLLEGIATE**   **Preston Deavers**
**ATHLETIC ASSOCIATION,** *et al.*, :

   **Defendants.**

## OPINION AND ORDER

Terrelle Pryor brings this putative class action for alleged antitrust violations and unjust enrichment against The Ohio State University, Learfield Communications, LLC, and the National Collegiate Athletic Association and one of its member athletic conferences, the Big Ten Conference, Inc. (the latter two will be referred to as the "Conference Defendants"). This matter is before the Court on the Motions to Dismiss filed by OSU (ECF No. 39), Learfield (ECF No. 43), and the Conference Defendants (ECF No. 41), and the Conference Defendants' Motion to Transfer Venue Or, In the Alternative, to Stay Proceedings (ECF No. 40).[1] Also pending is the Conference Defendants' Motion for Leave to File Supplemental Authority. (ECF No. 56.)

---

[1] Learfield requests oral argument on its Motion and the Conference Defendants request oral argument on both of their Motions, but the Court finds that no oral argument is necessary.

The Motion for Leave is **GRANTED**. And, for the reasons below, the Motion to Change Venue is **DENIED**, and the Motions to Dismiss are **GRANTED**.

## I. BACKGROUND

The NCAA has more than 1,100 member schools, conferences, and other organizations across the United States. (ECF No. 1 ("Compl."), PAGEID # 6.) The Big Ten is a multi-sport college athletics conference, and a member of the NCAA's Division I; OSU is a public university and a member of the Big Ten. (*Id.*, PAGEID # 7.) Learfield has been the exclusive partner to OSU in regard to all multimedia rights; its predecessor-in-interest signed a long-term multi-media rights contract with OSU in 2009 and another such contract with Learfield was announced in 2020.[2] (*Id.*, PAGEID # 6–7.)

Terrelle Pryor is a former student-athlete who played football at OSU as the team's starting quarterback from 2008 to 2010. (*Id.*, PAGEID # 6.) When Mr. Pryor played at OSU, Defendants required him to cede control of his publicity rights to them in perpetuity and also policed the use of his name, image, and likeness ("NIL") by other parties. (*Id.*, PAGEID # 4.) He was prohibited from endorsing any commercial product, even in the absence of compensation, and from obtaining any monetary benefit from his athletic career. (*Id.*) Meanwhile, Defendants required Mr. Pryor to promote college sports through the use of his NIL in advertising and interaction with sports donors and the media. (*Id.*)

---

[2] The Complaint says that Learfield "itself and through its successors" has been OSU's exclusive multimedia rights partner, yet the Complaint only references actions taken by Learfield and Learfield's predecessor-in-interest, IMG College. (Compl., PAGEID # 6.)

Although Mr. Pryor is no longer a student-athlete, Defendants continue to derive revenue from his NIL.[3] (*Id.*, PAGEID # 3.) The NCAA hosts videos that depict Mr. Pryor that can only be viewed after watching a commercial advertisement from which the NCAA profits. (*Id.*) And the Big Ten has a joint venture with another corporation that regularly replays games from the past, generating substantial advertising revenue. (*Id.*)

Mr. Pryor has never been compensated for the past and continuing use of his NIL. (*Id.*, PAGEID # 5.)

## II. MOTION TO CHANGE VENUE OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS

The Conference Defendants moved to transfer venue to the United States District Court for the Southern District of New York, arguing that Mr. Pryor's claims here overlap with the claims in an earlier filed class action, *Chalmers v. Nat'l Collegiate Athletic Ass'n*, Case No. 1:24-cv-05008 (S.D.N.Y.). The Conference Defendants' motion to transfer was made pursuant to 28 U.S.C. § 1404(a) and the "first-to-file" doctrine. (ECF No. 40, PAGEID # 130.) In the alternative, the Conference Defendants requested that the Court stay this case until *Chalmers* was decided. (*Id.*, PAGEID # 150–52.) The Southern District of New York has since dismissed the *Chalmers* class action. *See generally Chalmers v. Nat'l Collegiate Athletic Ass'n*, No. 24 CIV. 5008 (PAE), 2025 WL 1225168 (S.D.N.Y. Apr. 28, 2025).

---

[3] Mr. Pryor alleges that "unnamed co-conspirators" participated in Defendants' conduct, including the NCAA's member schools and Division I athletic conferences, various companies used by the NCAA to manage its licensing activities, and entities that preserve images from NCAA competitions. (*Id.*, PAGEID # 8.)

3

Under the "first-to-file" rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir.1984)). This doctrine promotes judicial economy and "encourages comity among federal courts of equal rank." *Id.*

Here, there are no longer two duplicative lawsuits pending in two federal courts of equal rank. Assuming for the sake of argument only that the lawsuit in the Southern District of New York was indeed duplicative, "that action is no longer pending and a transfer would no longer promote judicial economy." *JCM Ins. Serv., Inc. v. Gov't Emps. Ins. Co.*, No. 1:23-CV-1801, 2024 WL 4268167, at *2 (N.D. Ohio Sept. 23, 2024). Nor would a stay.

The Conference Defendants' Motion to Transfer Venue (ECF No. 40) is **DENIED**.

### III. MOTIONS TO DISMISS

Mr. Pryor brings claims for violations of Section 1 of the Sherman Act (Counts I and II) and unjust enrichment (Count III). OSU, the Conference Defendants, and Learfield each move to dismiss Mr. Pryor's claims, raising arguments under Rules 12(b)(1) and 12(b)(6). OSU argues that the Court lacks subject matter jurisdiction over Mr. Pryor's claims against it because his claims are barred by the Eleventh Amendment. The Conference Defendants argue, among other things, that Mr. Pryor lacks Article III standing to bring his federal antitrust claims and that his claims are untimely. Learfield purports to adopt the Conference

4

Defendants' arguments by reference,[4] while also making additional arguments for dismissal specific to it.

### A.     Standard of Review

Before a court may determine whether a plaintiff has failed to state a claim upon which relief may be granted, it must first find that it has subject matter jurisdiction. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 666–67 (S.D. Ohio 2019) (Marbley, J.) (citation omitted). Rule 12(b)(1) provides that the defendant may move to dismiss based on a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The standard of review of a motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Only a facial attack, which "questions merely the sufficiency of the pleading," is present here. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack requires the district court to "take[ ] the allegations in the complaint as true." *Id.* The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "is a test of the plaintiff's cause of action as stated in the

---

[4] Learfield's Motion states that it "incorporates by reference the points and authorities raised in" the Conference Defendants' Motion to Dismiss. (Learfield MTD, ECF No. 43, PAGEID # 209.) But the Federal Rules of Civil Procedure only authorize adoption by reference of statements in pleadings, not statements in motions. *Green v. Campbell Cnty., Tennessee*, 352 F. Supp. 3d 860, 867 (E.D. Tenn. 2018) (citing Fed. R. Civ. P. 10(c)).

complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

> **B. Analysis**
>
> **1. Mr. Pryor has Article III Standing to bring his antitrust claims.**

The Conference Defendants argue Mr. Pryor lacks Article III standing to bring his antitrust claims because he cannot establish an injury-in-fact. (Conf. Defs.' MTD, PAGEID # 193.)

Pursuant to Article III of the United States Constitution, standing is necessary to the exercise of jurisdiction and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Standing, in a conventional Article III sense, requires just proof of actual injury, causation and redressability." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007).

Injury is "the '[f]irst and foremost' of standing's three elements." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To allege the invasion of a legally protected interest, a plaintiff must show that the plaintiff has a right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021). "[J]ust because a plaintiff's claim might fail on the *merits* does not deprive the plaintiff of *standing* to assert it." *Id.* at 489 (emphasis in original). "Only if the claimed protected interest is 'wholly insubstantial and

7

frivolous' does a claim's failure on its merits turn into a jurisdictional defect." *Id.* (quoting *Steel Co.*, 523 U.S. at 89).

Here, Mr. Pryor's alleged harm is the lost compensation that he would have received but for Defendants' unlawful conduct. (Compl., PAGEID # 5.) This satisfies Article III's injury-in-fact requirement. *See NicSand*, 507 F.3d at 449 (holding lost profits resulting from alleged anti-competitive conduct "readily" satisfied Article III's injury requirement). Mr. Pryor also satisfies the causation and redressability requirements: he alleges that Defendants caused the injury when they engaged in anti-competitive conduct that restrained trade; and his request for damages and injunctive relief would redress his injury by permitting him to recover lost compensation and stop Defendants' anti-competitive conduct.

The Conference Defendants argue Mr. Pryor cannot satisfy the injury-in-fact requirement because he does not have publicity rights in the broadcast footage of games in which he played. In support of this argument, the Conference Defendants rely on *Marshall v. ESPN, Inc.*, 111 F. Supp. 3d 815 (M.D. Tenn. 2015), *aff'd,* 668 F. App'x 155 (6th Cir. 2016), where the Middle District of Tennessee dismissed the plaintiffs' claims alleging violations of their right to publicity in sports broadcasts under Tennessee law, concluding that Tennessee law provided no such right. *Id.* at 828. Then, as a result, that court found the plaintiffs could not allege an injury-in-fact as to their antitrust claims because they could not have been injured by a purported conspiracy to deny them the ability to sell non-existent rights. *Id.* at 835. The Conference Defendants argue that, like the plaintiffs in *Marshall*, Mr. Pryor

8

cannot plead an injury-in-fact because Ohio law does not provide him with a right of publicity in sports broadcasts. Unlike in *Marshall*, however, Mr. Pryor does not bring claims alleging Defendants violated his right to publicity in sports broadcasts. Rather, he claims Defendants' anti-competitive conduct requiring him to give them control over his NIL violated the Sherman Act.

Whether Mr. Pryor presents a valid claim under these facts is a merits question; the standing question assumes Mr. Pryor's theory to be correct and asks only whether he suffered an Article III injury by being deprived of compensation as a result. *See Ward v. NPAS, Inc.*, 63 F.4th 576, 582 (6th Cir. 2023).

Mr. Pryor has Article III standing to bring his antitrust claims.[5]

### 2. Sovereign immunity bars Mr. Pryor's claims against OSU.

OSU argues the Eleventh Amendment bars Mr. Pryor's claims against it. "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens.'" *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir.1993)). "Since a public university qualifies as an arm of the state, [OSU] is immune from suit under the Eleventh Amendment because it is well-settled that a

---

[5] The Conference Defendants also argue that Mr. Pryor fails to establish antitrust standing. (Conference Defs.' MTD, PAGEID # 193.) "[A]ntitrust standing and Article III standing are not one and the same," and a claim is subject to dismissal under Rule 12(b)(6) when the former is lacking. *NicSand*, 507 F.3d at 449. Because the Court dismisses Mr. Pryor's antitrust claims for independent reasons below, it need not address antitrust standing here.

plaintiff is precluded from directly suing a State in federal court[.]" *Id.* at 661 (cleaned up). Thus, OSU must be dismissed because it is immune from suit.

Mr. Pryor argues sovereign immunity does not bar his claims for three reasons: (1) Congress abrogated state sovereign immunity with respect to the Lanham Act; (2) OSU lacks immunity because it acted as a commercial participant; and (3) the *Ex parte Young* exception applies to Mr. Pryor's claims for prospective relief. None of these arguments are persuasive.

First, Mr. Pryor argues Congress expressly abrogated state sovereign immunity "[w]ith respect to Lanham claims like those at issue in this case[.]" (ECF No. 48 ("Pl.'s Resp. OSU MTD"), PAGEID # 593.) But he did not bring any Lanham Act claims. (*See generally* Compl.).

Second, Mr. Pryor argues that OSU acted as a commercial participant with respect to his NIL and therefore OSU is not entitled to state-action immunity under *Parker v. Brown*, 317 U.S. 341 (1943).[6] But OSU has asserted Eleventh Amendment immunity, not state-action immunity. "[T]he Eleventh Amendment *completely bars* suits against sovereign states (or state officials named in their official capacities) seeking retrospective monetary relief." *S & M Brands, Inc. v. Summers*, 393 F. Supp. 2d 604, 620 (M.D. Tenn. 2005) (emphasis added), *aff'd*, 228 F. App'x 560 (6th Cir. 2007). A state entity that is immune from suit under the Eleventh Amendment need not also satisfy the test for *Parker* state-action immunity to shield it from a

---

[6] State-action immunity "prevent[s] state governments' liability under the Sherman Act for their allegedly anticompetitive action." *VIBO Corp. v. Conway*, 669 F.3d 675, 687 (6th Cir. 2012) (citing *Parker*, 317 U.S. at 352).

plaintiff's antitrust claims. *See McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988, 997 (S.D. Ohio 2003) (Rice, C.J.). Thus, whether OSU acted as a commercial participant is irrelevant to its immunity in this case because OSU is immune under the Eleventh Amendment.

Third, Mr. Pryor argues OSU is not entitled to sovereign immunity under the *Ex parte Young* exception because he seeks prospective relief. (Pl.'s Resp. OSU MTD, PAGEID # 595–96.) But the *Ex parte Young* exception applies only to suits "for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations[.]" *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). Mr. Pryor has not sued any OSU officials in their official capacity here.

Accordingly, OSU is **DISMISSED**.

### 3. Mr. Pryor's claims are untimely.

The Conference Defendants seek dismissal of Mr. Pryor's Sherman Act and unjust enrichment claims as being untimely, arguing that Defendants' challenged conduct (requiring Mr. Pryor "to cede control" of his publicity rights "in perpetuity" or else forfeit his right to compete in college athletics) occurred more than a decade ago. (Conf. Defs.' MTD, PAGEID # 183 (citing Compl., PAGEID # 4).) Mr. Pryor responds that his claims are timely for three independent reasons: (1) the continuing violations doctrine renders his claims timely because Defendants' alleged unlawful conduct continues to the present; (2) the doctrine of equitable estoppel tolled the statute of limitations; and (3) the statute of limitations does not

11

apply to his claims for injunctive relief. The Court will address Mr. Pryor's arguments in support of his Sherman Act claims, before turning to his unjust enrichment claim.

### a) Sherman Act

#### (1) The continuing violations doctrine does not save Mr. Pryor's antitrust claims.

Claims brought under the Sherman Act are subject to a four-year statute of limitations beginning on the date that "the cause of action accrued." 15 U.S.C. § 15b. "A cause of action accrues and the limitations period commences each time a defendant commits an act which injures the plaintiff's business." *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 848 (6th Cir. 1990) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971)).

"However, just because a cause of action began outside the limitations period does not per se doom the claim." *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 720 (W.D. Tenn. 2022). Parties may allege a "continuing antitrust" violation – that is, when a party's interests "are repeatedly invaded." *Peck*, 894 F.2d at 849 (citation omitted). "'[I]n the context of a continuing conspiracy, the statute of limitations runs from the commission of the act that causes the plaintiff's damage.'" *Id.* (quoting *Chiropractic Coop. Ass'n of Mich. v. American Med. Ass'n*, 867 F.2d 270, 275 (6th Cir. 1989)). "'[E]ven when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.'" *Id.* (citation omitted). An overt act is defined as (1) "'a new and independent act that is not merely a reaffirmation of a previous act,'" and (2) an

12

act that "'inflict[s] a new and accumulating injury on the plaintiff.'" *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014) (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir.1996)). Based on the overt act requirement, "the Sixth Circuit has repeatedly rejected invocations of the continuing-violations defense that are mere reaffirmations of a previous act." *Id.* In the context of alleged anticompetitive contracts, "our decisions have repeatedly emphasized that profits, sales, and other benefits accrued as the result of an initial wrongful act are not treated as 'independent acts.'" *Id.*

Here, Mr. Pryor alleges that "**at the time the Plaintiff and the class played college sports**, the Defendants required them not only to cede control of their publicity rights to them in perpetuity, but also to police the use of their names, images, and likenesses by other parties or else forfeit their right to compete." (Compl., PAGEID # 4 (emphasis added).) As a result of Defendants' challenged conduct, Mr. Pryor claims he has "been deprived, and continue[s] to be deprived, of the compensation [he] would receive in an open market" while Defendants "have made millions, if not billions, of dollars." (*Id.*, PAGEID # 5.)

Mr. Pryor was a student-athlete at OSU from 2008 to 2010. Thus, Defendants' alleged act that caused his injury—requiring him to give them control over his publicity rights—occurred at the latest in 2010. And while Mr. Pryor alleges that he continues to feel the adverse impacts of Defendants' act, "the fact that [his] injuries have a rippling effect into the future only establishes that [he]

13

might have been entitled to future damages if [he] had brought suit within four years of the commission of the last antitrust violation." *Peck*, 894 F.2d at 849.

Mr. Pryor argues that the statute of limitations for his claims is restarted each time Defendants use footage or images of his performances for commercial purposes because "but for [Defendants'] price fixing agreement, he would have received royalties or other compensation[.]" (ECF No. 50 ("Pl.'s Resp. Conf. Defs.' MTD"), PAGEID # 608.) But the continued commercial usage of Mr. Pryor's NIL rights is a "manifestation" of Defendants' past conduct, not a new and independent act that restarts the statute of limitations. *See Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999); *see also Chalmers*, 2025 WL 1225168, at *10. Indeed, if the Court were to adopt Mr. Pryor's theory, "the applicable limitations period for a § 1 claim would be infinite—an antitrust plaintiff could routinely salvage an otherwise untimely claim by asserting that it continues to lose revenue because of past alleged anticompetitive conduct." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009).

Mr. Pryor also contends that Defendants' conduct constituted a continuing violation because he did not freely choose to enter a contract, arguing that Defendants' "horizontal price-fixing agreement provided him with no choice but to accept the restrictions on use of his NIL[.]" (Pl.'s Resp. Conf. Defs.' MTD, PAGEID # 609.) But he provides no authority that suggests the validity of the contract is part of the continuing violations analysis in the context of alleged anticompetitive contracts.

Defendants' alleged post-agreement conduct did not constitute a new overt act. Accordingly, the continuing violations doctrine does not apply to Mr. Pryor's Sherman Act claims.

### (2) The doctrine of fraudulent concealment does not equitably toll the limitations period for his antitrust claims.

Mr. Pryor next argues that the Court should find the statute of limitations for his antitrust claims was equitably tolled by the doctrine of fraudulent concealment.

To toll a limitations period on this basis, a plaintiff must show "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315 (6th Cir. 2007) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975)). "A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (citation omitted). With regard to the "wrongful concealment" element the plaintiff must point to "affirmative acts of concealment." *Hamilton Cnty.*, 491 F.3d at 319.

The Complaint alleges Defendants "engaged in fraudulent concealment of their misuse of the publicity rights of the Plaintiffs and the class under the guise of rules they claimed benefited student-athletes, preserved purported amateurism, and protected the integrity of college sports." (Compl., PAGEID # 4.) But even

15

assuming the NCAA's rules concealed their profit-motive for their actions, Mr. Pryor knew at the time he played college sports that Defendants required him to relinquish control of his publicity rights—the cause of the injury he now complains of. (*Id.*) He does not allege that he lacked knowledge of what he was relinquishing, or that he was unaware of Defendants' practice of commercially using his NIL.

Mr. Pryor argues "the true nature" of Defendants' conduct was not knowable until the United States Supreme Court's decision in *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, (2021), upholding an injunction against the NCAA's limits on education-related benefits that violated the antitrust laws. (Pl.'s Resp. Conf. Defs.' MTD, PAGEID # 610.) But other student-athletes have brought lawsuits against the NCAA about substantively the same practices that Mr. Pryor now challenges dating to 2009—and he does not claim to have been unaware of those earlier litigations. *See, e.g.*, *O'Bannon v. NCAA*, 802 F.3d 1049, 1055 (9th Cir. 2015).[7] His choice to not bring this action until *Alston* was decided does not excuse his delay.

Mr. Pryor knew the material facts underlying his antitrust claims long before the four-year limitations period had run, precluding him from relying on the fraudulent-concealment doctrine to save those claims now.

---

[7] On July 21, 2009, Ed O'Bannon, a former college basketball player sued the NCAA, among other parties, alleging that the NCAA's amateurism rules, insofar as they prevented student-athletes from being compensated for use of their NILs, were an illegal restraint of trade under Section 1 of the Sherman Act. *See O'Bannon*, 802 F.3d at 1055; *see* 3d Consolidated Am. Class Action Compl., *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 9 Civ. 1967 (N.D. Cal. July 19, 2013), Dkt. 832 ("*O'Bannon* Complaint"). He specifically challenged the NCAA's rules that he claimed required student-athletes to sign forms "relinquish[ing] all rights in perpetuity for use of their images, likenesses and/or names," associated with playing their sports. *O'Bannon* Complaint ¶ 610.

16

### (3) Laches bars Mr. Pryor's claims for injunctive relief.

Finally, Mr. Pryor argues that the Sherman Act's four-year statute of limitations does not apply to his claims for injunctive relief. (Pl.'s Resp. Conf. Defs.' MTD, PAGEID # 610.) The Conference Defendants counter that the doctrine of laches bars Mr. Pryor's injunctive claims. (ECF No. 54, PAGEID # 658.)

In support of the proposition that the statute of limitations does not apply to his injunctive relief claims, Mr. Pryor relies solely on out-of-circuit cases, each of which recognize that the doctrine of laches may nonetheless bar a plaintiff's claims for injunctive relief. *See Rite Aid Corp. v. Am. Express Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 272 (E.D.N.Y. 2010) *abrogated on other grounds by U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019); *Argus Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589, 599 (S.D.N.Y. 1982); *Blue Cross & Blue Shield of Vermont v. Teva Pharm. Indus., Ltd.*, 712 F. Supp. 3d 499, 536 (D. Vt. 2024).

The Sixth Circuit has left open whether a federal antitrust claim for equitable relief "is barred by the [four year statute of limitations] or whether equitable doctrines control disposition of the equitable claim[.]" *Dayco*, 523 F.2d at 395 (noting that "[m]ost courts that have considered this question have assumed that there is only one cause of action for violation of the antitrust laws, and that when the statute of limitations bars the cause of action, it is immaterial whether equitable or legal relief was sought."). The Court likewise need not resolve this question here because even assuming (without deciding) that the four-year statute

17

of limitations does not apply to Mr. Pryor's injunctive claims, the doctrine of laches bars them.

Laches is "'a negligent and unintentional failure to protect one's rights.'" *United States v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010) (citation omitted). "Generally, when applying laches, courts will look to the analogous statute of limitations to determine whether a delay was unreasonable or prejudicial." *McKeon Prods., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 744 (6th Cir. 2021). "[I]f the plaintiff asserts the claim beyond the statutory period, it is presumed unreasonable and prejudicial to the defendant" and "[t]he plaintiff then bears the burden of rebutting the presumption." *Id.*

As discussed above, Mr. Pryor failed to assert his claims for injunctive relief within the four-year statutory period. And he makes no arguments to rebut the presumption that allowing his claims to proceed would be unreasonable and prejudicial to Defendants. Accordingly, even if the four-year statute of limitations does not bar his injunctive claims, they are time-barred by the doctrine of laches.

Mr. Pryor's Sherman Act claims (Counts I and II) are **DISMISSED**.[8]

---

[8] Although Learfield did not separately raise the statute of limitations defense, the Court finds it appropriate to extend its analysis to Learfield for all of Mr. Pryor's claims because "[w]e apply time bars to all similarly situated defendants so long as the plaintiff was 'on notice that, to survive [a dispositive motion], it had to come forward with evidence showing that the statute of limitations did not bar its [ ] claims.'" *Georgia-Pac. Consumer Prods. LP v. NCR Corp.*, 32 F.4th 534, 547 (6th Cir. 2022) (citing *Grand Rapids Plastics,* 188 F.3d at 407). The Court sees no reason to depart from this rule.

### b) Unjust Enrichment

The Conference Defendants move to dismiss Mr. Pryor's unjust enrichment claim as untimely.

Ohio's statute of limitations for an unjust enrichment claim is six years. [9] Ohio Rev. Code. § 2305.07. An unjust enrichment claim does not accrue "'until the last point in time that the plaintiff conferred and a defendant unjustly received a benefit.'" *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 449 (6th Cir. 2014) (quoting *Desai v. Franklin*, 2008-Ohio-3957, ¶ 22 (9th Dist.)). "[T]he statute of limitations for an unjust enrichment claim is not subject either to equitable tolling or a discovery rule." *Blank v. Bluemile, Inc.*, 2021-Ohio-2002, ¶ 42 (10th Dist.) (collecting cases). Ohio courts have also refused to apply Ohio's continuing violations doctrine to claims for unjust enrichment because "(1) the Supreme Court of Ohio ha[s] taken the position that courts are reluctant to apply this doctrine outside the civil rights context; (2) continuing violations are distinguished from continuing effects of prior violations; in this context, a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation; and (3) the lack of authority in Ohio extending this doctrine to breach of contract cases." *Brown v. Fukuvi USA Inc.*, 2022-Ohio-1608, ¶¶ 81, 87 (2nd Dist.) (cleaned up).

---

[9] While the Complaint does not identify any jurisdiction's law as the basis for Mr. Pryor's unjust enrichment claim, both the parties cite to Ohio law as governing that claim so the Court will do the same here.

19

Mr. Pryor argues his unjust enrichment claim is timely for the same reasons as his antitrust claims. (Pl.'s Resp. Conf. Defs.' MTD, PAGEID # 618.) But, as discussed above, he gave Defendants the benefit (control over his NIL) over a decade ago. The "continual ill effects" resulted from this original alleged violation, not from Defendants' later conduct. Accordingly, his unjust enrichment claim is time-barred.

Mr. Pryor's unjust enrichment claim (Count III) is **DISMISSED**.

## IV. CONCLUSION

The Conference Defendants' Motion for Leave to File Notice of Supplemental Authority (ECF No. 56) is **GRANTED**.

The Conference Defendants' Motion to Transfer Venue Or, In the Alternative, to Stay Proceedings (ECF No. 40) is **DENIED**.

OSU's Motion to Dismiss (ECF No. 39), Learfield's Motion to Dismiss (ECF No. 43), and the Conference Defendants' Motion to Dismiss (ECF No. 41) are **GRANTED.**

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE
UNITED STATES DISTRICT COURT**